THE HARTFORD INSURANCE COMPANY *vs.* THE HERTZ
CORPORATION & others[1]
(and a companion case[2] ).

Middlesex. April 4, 1991. - May 28, 1991.

Present: LIACOS, C.J., ABRAMS, LYNCH, & GREANEY, JJ.

*Statute*, Construction. *Insurance*, Motor vehicle insurance, Construction of policy, Liability insurance, Underinsured motorist, Self-insurer. *Motor Vehicle*, Insurance. *Practice, Civil*, Appeal. *Words*, "Policy."

A motor vehicle rental company that insured its own vehicles and secured its obligations by purchasing motor vehicle liability bonds was required by the language of G. L. c. 175, § 113L, to provide compulsory underinsured motorist benefits to a customer who was injured while driving one of the company's rental vehicles. [282-287]

A party's failure to file a cross appeal from the judgment in a civil action in the Superior Court did not preclude this court from modifying the judgment, inasmuch as the general rule requiring the filing of a cross appeal is a rule of practice, and is not jurisdictional, and where, moreover, the judgment as modified was not necessarily more favorable to the party failing to file a cross appeal than was the judgment originally entered. [287-288]

CIVIL ACTIONS commenced in the Superior Court Department on September 6, 1988, and September 28, 1988, respectively.

The cases were consolidated for trial and were heard by *Catherine A. White*, J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

---

[1]HCM Claims Management Company and Marcia Canter. HCM is identified in Hartford's complaint as representing Hertz in these proceedings. Canter is not a party to this appeal.

[2]The Hertz Corporation & another *vs.* Marcia Canter. Canter's motion to consolidate these actions for trial was allowed.

*Mark A. McCormack* for the plaintiff.

*D. Alice Olsen* (*Lauren B. Pillsbury* with her) for The Hertz Corporation & another.

*Charles M. Hughes*, for Marcia Canter, was present but did not argue.

GREANEY, J. We allowed an application for direct appellate review to decide whether The Hertz Corporation (Hertz), a motor vehicle rental company which insures its own vehicles, is required to provide underinsured motorist benefits to a customer who was injured while driving one of its vehicles. A judge of the Superior Court granted summary judgment in favor of Hertz pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974), reasoning that the statute in force at the time, which provided for compulsory underinsured motorist coverage, G. L. c. 175, § 113L (1984 ed.), applied exclusively to motor vehicle liability "policies," and therefore did not apply to self-insurers like Hertz, who insure their vehicles through motor vehicle liability bonds. We conclude that the Legislature intended compulsory underinsured motorist coverage to apply to all insured motor vehicles, including self-insured vehicles. Consequently, we reverse.

The material facts are undisputed. On May 5, 1984, Marcia Canter, while operating a vehicle she had leased from Hertz under a written rental agreement, was injured when she collided with another vehicle. The insurer of the other vehicle paid Canter $10,000, the limit of its policy, on Canter's bodily injury claim against its insured. Canter alleges that her damages exceed the $10,000 limit on the other vehicle's bodily injury liability policy and has sought underinsured motorist benefits. At the time of the accident, Canter owned an automobile and was insured under a motor vehicle liability policy issued by the Hartford Insurance Company (Hartford), which included underinsured motorist coverage with limits of $10,000 per person and $20,000 per accident.

Hertz was a self-insurer in 1984, having purchased a motor vehicle liability bond to secure its obligations under the motor vehicle financial responsibility laws with respect to its entire fleet of Massachusetts vehicles. See G. L. c. 90, § 32E

(1988 ed.). Hertz was the obligor, and Aetna Insurance Company (Aetna) the surety, on the bond. Canter's rental agreement with Hertz expressly excluded uninsured motorist coverage and made no provision for underinsured motorist coverage.

In 1988 Canter filed a demand for arbitration with the American Arbitration Association to recover underinsured motorist benefits from Hartford, and Hertz or HCM Claim Management Corporation (HCM) (or both Hertz and HCM), in connection with the accident. In response, Hertz and HCM filed a declaratory judgment action in the Superior Court against Canter seeking a declaration that neither Hertz, as a self-insurer, nor HCM is required to provide Canter with underinsured motorist coverage. Hartford then filed a declaratory judgment action against Hertz, HCM, and Canter, alleging that Hertz was required, by law and by the rental agreement, to provide underinsured motorist benefits to Canter, and that Canter was required to exhaust her benefits with Hertz before recovering from Hartford. Hartford also sought a declaration that, if Hertz provides no underinsured motorist benefits, Hartford is not required to provide any either. The two declaratory judgment actions were consolidated, and the arbitration proceedings were stayed pending resolution of the actions.

Hartford filed a motion for summary judgment on its action, which was opposed by Hertz and HCM. Canter also filed a motion for summary judgment. Thereafter, Hertz and HCM filed a cross motion for summary judgment in each of the consolidated actions.[3] A judge of the Superior Court granted summary judgment in favor of Hertz and HCM, and denied Hartford's motion for summary judgment. In an amended memorandum of decision, the judge concluded that Hertz and HCM were not required, under G. L. c. 175, § 113L, to provide underinsured motorist benefits to Canter,

---

[3]We conclude that the material contained in Hertz's supplemental appendix — motions, oppositions to motions, and the final judgment — were properly before the Superior Court and, thus, are properly before this court on appeal.

and that Hartford was required to provide such benefits. A single judgment was entered in the consolidated actions. An appeal was taken by Hartford but not by Canter.

The argument made by Hertz, and accepted by the Superior Court judge, is based entirely on the wording of the applicable statute. General Laws c. 175, § 113L, as amended through St. 1980, c. 532, §§ 1, 2 (as in effect prior to St. 1988, c. 273, §§ 46, 47),[4] provides in pertinent part that "[n]o policy shall be issued or delivered in the commonwealth with respect to a motor vehicle . . . registered in this state, unless such policy provides" uninsured and underinsured motorist coverage.[5] Hertz argues that the statute's use of the word "policy" indicates a legislative intent that compulsory underinsured motorist coverage should apply only to motor vehicle liability policies, and not to motor vehicle liability bonds. In considering the statutory scheme as a whole, we find that the language of this provision is ambiguous and

---

[4]In 1988, G. L. c. 175, § 113L, was amended to make underinsured motorist coverage optional. Uninsured motorist coverage is still compulsory. St. 1988, c. 273, §§ 46, 47. See *Vaiarella* v. *Hanover Ins. Co.*, 409 Mass. 523, 525 n.3 (1991). For the distinction between underinsured and uninsured motorist coverage, see G. L. c. 175, § 113L (1) & (2) (1988 ed.).

[5]At the time of the accident, G. L. c. 175, § 113L (1), read in full as follows:

"No policy shall be issued or delivered in the commonwealth with respect to a motor vehicle, trailer or semitrailer registered in this state unless such policy provides coverage in amounts or limits prescribed for bodily injury or death for a liability policy under this chapter, under provisions approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles, trailers or semitrailers and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, and coverage for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of insured motor vehicles, trailers or semitrailers, whose policies or bonds are insufficient in limits of liability to satisfy said damages, to the extent that said damages exceed said limits of liability subject to the terms of the policy."

imprecise, and is not a clear and conclusive indication of legislative intent.

Hertz contends that the Legislature deliberately omitted the word "bond" from the first clause of G. L. c. 175, § 113L (1), because in a later clause the statute refers to "policies or bonds." As a general rule, when the Legislature has employed specific language in one part of a statute, but not in another part which deals with the same topic, the earlier language should not be implied where it is not present. See *Beeler* v. *Downey*, 387 Mass. 609, 616 (1982); *First Nat'l Bank* v. *Judge Baker Guidance Center*, 13 Mass. App. Ct. 144, 153 (1982). However, the two clauses at issue here cannot clearly be said to deal with the same topic. The first clause sets forth the requirement that certain specified types of coverage must be provided. The second clause defines an underinsured motorist as one "whose policies or bonds are insufficient in limits of liability to satisfy" the damages of a third party. G. L. c. 175, § 113L (1). Because the two clauses deal with different topics, any presumption of consistency in the language used is not compelling.

Further, when considered in relation to the general statutory plan, the word "policy" in G. L. c. 175, § 113L (1), does not appear to be a specific and exclusive reference to motor vehicle liability policies. See *Commissioner of Revenue* v. *Wells Yachts South, Inc.*, 406 Mass. 661, 664 (1990) ("The words of a statute must be construed in association with the general statutory plan"). "Motor vehicle liability policy" and "[m]otor vehicle liability bond" are precisely defined, and are distinguished from one another, in G. L. c. 90, § 34A. However, this statute expressly provides that these definitions apply only in the construction and application of §§ 34A-34N of c. 90. When other statutes, outside of these provisions, apply the statutory definitions, they must refer explicitly to G. L. c. 90, § 34A. In particular, statutes which dis-

tinguish between motor vehicle liability policies and motor vehicle liability bonds, refer to the statutory definitions.[6]

The word "policy," thus, has "acquired a peculiar and appropriate meaning in law" only when specific reference is made to these definitions. G. L. c. 4, § 6, Third (1988 ed.). That meaning does not necessarily apply when no such reference is made. While most of the surrounding provisions of G. L. c. 175 pertaining to motor vehicle insurance explicitly refer and cite to the statutory definitions,[7] § 113L (1) does not. This is an indication that the term "policy," when used in G. L. c. 175, § 113L (1), can have a different meaning from the meaning contemplated by statutes that refer to G. L. c. 90, § 34A. Cf. *Insurance Rating Bd.* v. *Commissioner of Ins.*, 356 Mass. 184, 188-189 (1969). "Policy" as used in § 113L (1) may refer not only to motor vehicle liability policies, but to some broader notion of insurance coverage that also applies to bonds.

Another portion of the statute provides evidence that "policy," as used in G. L. c. 175, § 113L (1), may have been intended to include coverage provided by a self-insurer. In determining the legislative intent behind a particular provision, we may also look to relevant provisions of other parts of the statute. *Quincy City Hosp.* v. *Rate Setting Comm'n*, 406 Mass. 431, 442 (1990). General Laws c. 175, § 113C (1988 ed.), which requires insurers to offer coverage in addition to what is already required by statute, provides that "no company shall issue such motor vehicle liability policies or act as surety upon such motor vehicle liability bonds [as defined in G. L. c. 90, § 34A] unless it makes a mandatory offer to issue to any person purchasing such policy or bond, at his option, additional coverage, beyond that required by section

---

[6]See G. L. c. 175, § 113A (1988 ed.) ("No motor vehicle liability policy as defined in section thirty-four A of chapter ninety . . . . The provisions of this section, except provisions . . . shall apply to motor vehicle liability bonds as defined in said section thirty-four A . . .").

[7]See, e.g., G. L. c. 175, §§ 113A, 113B, 113C, 113D, 113F, 113G, 113H, 113J, 113K, & 113N (1988 ed. & 1990 Supp.).

thirty-four A of chapter ninety . . . of uninsured motor vehicle coverage, additional coverage beyond that required by section one hundred and thirteen L." While not conclusive, this statute furnishes some indication that the Legislature contemplated that G. L. c. 175, § 113L (1), would apply to self-insurers. The statute presumably would not require self-insurers to offer *additional* uninsured motorist coverage unless some amount of that type of coverage was already required.

In sum, we are not convinced that the Legislature's use of the word "policy" in G. L. c. 175, § 113L (1), clearly expresses an intent to exclude self-insurers who purchase motor vehicle liability bonds from the obligation of providing underinsured motorist coverage. When one provision of a statute is imprecise or ambiguous, it is our duty to give that provision a reasonable construction, taking into account the legislative purpose and the statute as a whole. *Tedford* v. *Massachusetts Hous. Fin. Agency*, 390 Mass. 688, 696 (1984), and cases cited. We may determine the purpose of a statute by considering, along with the statute's language, the supposed problem to be corrected and the objective sought to be attained. *O'Brien* v. *Director of the Div. of Employment Sec.*, 393 Mass. 482, 487-488 (1984). *Labor Relations Comm'n* v. *Selectmen of Dracut*, 374 Mass. 619, 624 (1978). We now examine those considerations.

General Laws c. 175, § 113L, was enacted with the broad objective of ensuring that victims of automobile accidents would be adequately compensated for their injuries when the accidents are caused by the negligence of unidentified motorists or motorists with insufficient or no liability coverage. See *Surrey* v. *Lumbermens Mut. Casualty Co.*, 384 Mass. 171, 177 (1981) ("The aim of the . . . statute is to minimize the catastrophic financial loss for victims of automobile accidents caused by the negligence of uninsured tortfeasors"). See also *Cardin* v. *Royal Ins. Co.*, 394 Mass. 450, 454 (1985); 1968 Senate Doc. No. 1030, at 6-7. We do not believe that the Legislature intended this broad protection to depend on the

fortuity of which form of insurance a motorist holds. Although Canter had underinsured motorist coverage pursuant to her own policy, there are a significant number of motorists (especially in large urban areas) who do not own automobiles and whose sole protection may be in the form of a motor vehicle liability bond purchased by a self-insurer. The broad remedial purpose of G. L. c. 175, § 113L, would not be served if an automobile owner could avoid maintaining underinsured motorist coverage by becoming self-insured under a motor vehicle liability bond. See *Surrey, supra* at 177. Hertz has offered no reason why self-insurers should be excluded from the requirements of G. L. c. 175, § 113L, and the statute is sufficiently imprecise to allow for the more reasonable construction requiring underinsured motorist coverage for all motor vehicles registered in Massachusetts, whether or not they are self-insured.[8]

The fact that the rental agreement between Canter and Hertz contains express language excluding uninsured motor-

---

[8]While this is an issue of first impression for this court, courts in several other States have addressed the problem. Those decisions are of limited value because they are based largely on the language of the particular statutes or contracts involved. However, it is significant that a number of courts have interpreted similarly imprecise statutes such that they require self-insurers to provide or to offer uninsured or underinsured motorist coverage. See, e.g., *Twyman* v. *Robinson*, 255 Ga. 711 (1986); *Jones* v. *King*, 549 So. 2d 350 (La. Ct. App. 1989); *Crocker* v. *Transport of N.J.*, 169 N.J. Super. 498 (1979); *Allstate Ins. Co.* v. *Shaw*, 52 N.Y.2d 818 (1980); *Modesta* v. *Southeastern Pa. Transp. Auth.*, 503 Pa. 437 (1983); *Southern Home Ins. Co.* v. *Burdett's Leasing Serv., Inc.*, 268 S.C. 472 (1977).

There are also contrary decisions. See, e.g., *Mountain States Tel. & Tel. Co.* v. *Aetna Casualty & Sur. Co.*, 116 Ariz. 225 (Ct. App. 1977); *O'Sullivan* v. *Salvation Army*, 85 Cal. App. 3d 58 (1978); *White* v. *Regional Transp. Dist.*, 735 P.2d 218 (Colo. Ct. App. 1987); *Robinson* v. *Hertz Corp.*, 140 Ill. App. 3d 687 (1986); *Snyder* v. *Roadway Express, Inc.*, 7 Ohio App. 3d 218 (1982); *American States Ins. Co.* v. *Utah Transit Auth.*, 699 P.2d 1210 (Utah 1985); *Shelton* v. *American Re-Insurance Co.*, 210 Va. 655 (1970). As has been mentioned, however, these decisions have limited value, and we "need not analyze closely the differences in the particular clauses or in the governing statutes in such cases." *Johnson* v. *Travelers Indem. Co.*, 359 Mass. 525, 528 (1971). To the extent that outside decisions are helpful, we prefer the logic and reasoning of the decisions cited in the first paragraph of this footnote.

ist coverage, and does not provide for underinsured motorist coverage, does not relieve Hertz of its obligation to provide the coverage mandated by statute. Provisions of a rental agreement "cannot prevail if [they are] contrary to the statutory language or the legislative policy of G. L. c. 175, § 113L." *Cardin, supra* at 453. See *Surrey, supra* at 173; *Johnson* v. *Travelers Indem. Co.*, 359 Mass. 525, 528 (1971). We hold that Hertz was required by statute to provide underinsured motorist benefits to Canter according to the terms of G. L. c. 175, § 113L.[9] Coverage provided by Hertz is primary to any coverage that Canter might receive from Hartford or any other source.[10]

Finally, Hertz argues that we do not have jurisdiction to order Hertz or HCM to pay underinsured motorist benefits to Canter, because Canter failed to file a cross appeal from the final judgment in the Superior Court. While the general

---

[9]The legal counsel for the Division of Insurance has submitted an affidavit setting forth the Division's opinion that G. L. c. 175, § 113L, does not apply to self-insurers. While it is true that the Legislature has delegated to the Commissioner of Insurance the authority to interpret this statute, see *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 90 (1977), the Commissioner's interpretation is subject to judicial review and is "hardly persuasive" where the interpretation violates the language and policy of the statute. See *Cardin, supra* at 456. Because we conclude that the legislative policy behind G. L. c. 175, § 113L, mandates that it apply to self-insurers, and the statute's language permits such a construction, we decline to follow the Division's interpretation.

[10]Because we hold that Hertz is required by statute to provide underinsured motorist benefits to Canter, we need not reach Hartford's argument that the rental agreement itself provides a basis for requiring such benefits of Hertz.

In addition, we are not convinced by Hartford's contention that, because the rental agreement contains a liability limit of $100,000 for bodily injury, it must also be construed to contain a limit of $100,000 for underinsured motorist coverage. Because the agreement made no mention of underinsured motorist coverage, and expressly excluded uninsured motorist coverage, there cannot reasonably be said to be any ambiguity on this point in the contract which should be construed against the insurer. See *Slater* v. *United States Fidelity & Guar. Co.*, 379 Mass. 801, 804 (1980), and cases cited. Canter could not reasonably have expected that the limits of underinsured motorist coverage to which she was entitled were any greater than the minimum required by G. L. c. 175, § 113L. See *Home Indem. Ins. Co.* v. *Merchants Distribs., Inc.*, 396 Mass. 103, 107 (1985).

rule states that an appellee such as Canter may not secure modification of a judgment unless she has filed a cross appeal, this is a rule of practice, and is not jurisdictional. See *O'Connor* v. *City Manager of Medford*, 7 Mass. App. Ct. 615, 617-618 (1979), and cases cited. See also 9 Moore's Federal Practice par. 204.11[5] (2d ed. 1989); 15 C.A. Wright, A.R. Miller & E.H. Cooper, Federal Practice and Procedure § 3904 (1976).

In addition, we have generally stated the rule as providing that "failure to take a cross appeal precludes a party from obtaining a judgment *more favorable to it than the judgment entered below*" (emphasis added). *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 43 n.5 (1977). See *M.L. Shalloo, Inc.* v. *Ricciardi & Sons Constr., Inc.*, 348 Mass. 682, 684 (1965). The only issue raised in this appeal is which insurer — Hertz or Hartford — is required to pay primary underinsured motorist benefits to Canter. As indicated by her brief, Canter's interest in this appeal was in ensuring that she receive any benefits to which she may be entitled, whether from one insurer or the other. The principal effect of our holding on Canter is to require that Hertz stands primarily liable to pay the benefits. Our decision does not necessarily result in a judgment more favorable to Canter than the judgment entered below. The rule of practice stated above is a useful one that is applied in the ordinary case. Based on the circumstances of this case, however, we do not consider Canter's failure to file a cross appeal as diminishing her rights.

The judgment is vacated. A declaration is to be made in the consolidated actions that Hertz is required to pay primary underinsured motorist benefits to Canter according to the terms of G. L. c. 175, § 113L, as in effect in 1984. There then are to be further proceedings in the cases, including ar-

bitration if appropriate, consistent with the above-stated declaration, after which an appropriate final judgment is to be entered.

*So ordered.*