TYLER, Appellant,

v.

KELLEY; Reserve Rent–A–Car, Appellee.

[Cite as *Tyler v. Kelley* (1994), 98 Ohio App.3d 444.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63163.

Decided Nov. 7, 1994.

*Levey & Gruhin, Harold L. Levey* and *Arthur E. Dombek,* for appellant.

*Keller, Scully, Williams & Curtin Co., L.P.A., Stanley S. Keller* and *Daniel Hurley,* for appellee.

JAMES M. PORTER, Judge.

Plaintiff-appellant Teresa Tyler appeals[1] from the trial court's granting of summary judgment in favor of defendant-appellee Reserve Rent–A–Car, arising out of a dispute involving uninsured motorist coverage under a car rental agreement. Plaintiff claims such coverage applies under R.C. 3937.18 and the rental agreement. Defendant claims it is a self-insurer and under Ohio law and the agreement it was not required to supply such coverage; but even if it was required, plaintiff declined coverage. We find merit to plaintiff's assignments of error and reverse the summary judgment for Reserve for the reasons discussed below.

On August 30, 1990, plaintiff (then known as Teresa Harris) leased an automobile from Reserve pursuant to a standard form Reserve Rent–A–Car Rental Agreement of the same date. The Rental Agreement was pre-filled out at the time plaintiff picked up the car, and she simply signed and initialed the form at various points without reading the document. On September 20, 1990, plaintiff was involved in an automobile accident with an uninsured motorist, co-defendant Thomas Kelley. Plaintiff claims that Reserve wrongfully refused to provide uninsured motorist coverage to plaintiff pursuant to Ohio law and the rental agreement.

On December 30, 1991, the trial court entered summary judgment for Reserve and denied plaintiff's cross-motion for summary judgment, both without opinion. On January 10, 1991, the court amended its judgment entry to add that there was no just cause for delay under Civ.R. 54(D).

---

1. Oral argument was had on this appeal on June 26, 1993. This appeal and the ruling thereon were held in abeyance pursuant to a suggestion of bankruptcy of appellee Reserve Rent–A–Car and the automatic stay provision of Section 362, Title 11, U.S.Code. The bankruptcy court lifted the stay as to this matter on September 29, 1994.

We will treat plaintiff's two assignments of error together, as they involve common questions of law and fact and the rights of the respective parties are determined from a construction of the rental agreement.

"I. The trial court below erred in denying appellant's motion for summary judgment against the defendant Reserve Rent-A-Car, as to finding that the defendant insured the plaintiff for injuries caused by an at-fault, uninsured driver; and, as to finding that the plaintiff did not reject such coverage.

"II. The trial court below erred in granting appellee's motion for summary judgment against the plaintiff, as to finding that the defendant did not insure the plaintiff for injuries caused by an at-fault, uninsured driver; and as to any finding that the plaintiff validly rejected such coverage."

We believe that the outcome of this appeal turns on a construction of the rental agreement and the application of Ohio law thereto. Since our review is strictly a legal one, no special deference need be shown to the trial court's ruling in such instances. "Our summary judgment analysis boils down to a determination of whether either party is entitled to relief as a matter of law." *Lorain Cty. Commrs. v. United States Fire Ins.* (1992), 81 Ohio App.3d 263, 267, 610 N.E.2d 1061, 1064, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471, 364 N.E.2d 267, 273. We review the matter *de novo*.

R.C. 3937.18 states as follows:

"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following are provided:

"(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury or death under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom;

"(2) Underinsured motorist coverage * * *;

" * * *

"(C) The named insured may only reject or accept both coverages offered under division (A) of this section."

■ Reserve is a certified self-insurer under R.C. 4509.72 and therefore contends that it is not subject to the mandatory requirements of R.C. 3937.18 to supply uninsured motorist coverage. Reserve is quite right in asserting that a certified self-insurer is *not obligated* under R.C. 3937.18 to provide uninsured motorist coverage. This is clearly established by the decision in *Grange Mut. Cas. Co. v. Refiners Transp. & Terminal Corp.* (1986), 21 Ohio St.3d 47, 21 OBR 331, 487 N.E.2d 310, where the Ohio Supreme Court, in a unanimous decision, held in its syllabus as follows: "The uninsured motorist provisions of R.C. 3937.18 do not apply to either self-insurers or financial responsibility bond principals." This decision has been followed by other cases which have given it a broad reading. *Robinson v. Yellow Cab Co.* (1986), 33 Ohio App.3d 72, 514 N.E.2d 450; *Am. States Ins. Co. v. Hertz Corp.* (Dec. 31, 1987), Mahoning App. No. 87 C.A. 20, unreported, 1987 WL 32983.

Under these authorities, it seems clear that Reserve, *qua* self-insurer, was *not obligated* to supply uninsured motorist coverage to plaintiff under R.C. 3937.18. However, the issue plaintiff presses is whether, under the rental agreement, Reserve contractually undertook to supply such coverage to the driver lessee by offering liability coverage. Plaintiff argues that even though defendant was a certified self-insurer, once it offered and charged plaintiff for liability insurance coverage, which it concededly did, it became bound by the uninsured motorist statute.

We find that the Ohio authorities cited above are distinguishable from, and not dispositive of, the case before us. In *Grange Mut. Co. v. Refiners Transp. & Terminal Corp., supra,* the Supreme Court held that self-insured employees are not required to provide uninsured motorist coverage for their own employees while operating the employer's vehicles. That case did not address the situation where a self-insured offers liability insurance coverage to the public. *Robinson v. Yellow Cab Co., supra,* held that a self-insured common carrier (a taxi-cab company) was not required to provide uninsured motorist coverage to its passengers. Again, there is no indication that Yellow Cab offered liability insurance coverage to the passenger. *Am. States Ins. Co. v. Hertz Corp., supra,* appears to be more analogous to the case herein in that it deals with a rental car company and its customer who was injured by an uninsured motorist. However, the case does not indicate that Hertz offered the injured customer insurance coverage as in this case, nor are the terms of the rental agreement discussed. The plaintiff's argument herein, therefore, appears to present a question of first impression in Ohio and commends itself to a review of the law of sister states in similar cases.

The issue may be framed as follows: Where a self-insured car rental agency offers liability insurance coverage to a rental customer in a state with an

uninsured motorist statute, does the act of offering such liability coverage bring the car rental agency within the purview of the uninsured motorist statute?

The recent case of *Van Vonno v. Hertz Corp.* (1992), 120 Wash.2d 416, 841 P.2d 1244, bears on the formulated issue. In that case, the Washington Supreme Court affirmed summary judgment and held that the self-insurer Hertz was liable for statutory uninsured motorist coverage to its lessee under Oregon law when it undertook, pursuant to its rental agreement, to supply liability coverage. The court stated as follows:

"States confronting cases in which a self-insurer leased a vehicle to a third person almost uniformly require the self-insurer to offer uninsured motorist coverage. E.g., *Twyman v. Robinson,* 255 Ga. 711, 342 S.E.2d 313 (1986); *Trobaugh v. Migliore,* 597 So.2d 494 (La.Ct.App.1992); *Hartford Ins. Co. v. Hertz Corp.,* 410 Mass. 279, 572 N.E.2d 1 (1991). Courts imposing a duty on the self-insurer generally view a vehicle rental agreement as a contract containing insurance provisions, thereby constituting a motor vehicle liability policy. E.g., *Trobaugh,* 597 So.2d at 496. By issuing a liability policy, the rental car company incurs a duty to offer the lessee an opportunity to accept or reject uninsured motorist coverage. E.g., *Trobaugh,* 597 So.2d at 496; see La.Rev.Stat.Ann. § 22:1406(D) (1978 & Supp.1992)." *Id.* at 422–423, 841 P.2d at 1248.

After distinguishing a number of cases, including *Grange Mut. Cas. Co. v. Refiners Transp. & Terminal Corp.* (1986), 21 Ohio St.3d 47, 21 OBR 331, 487 N.E.2d 310, on the grounds that "these cases generally involve vehicles driven by an agent or employee of the self-insurer," the court continued:

"Hertz, however, ignores its ability to be a self-insurer in one context and an insurer in another. When Hertz pays judgments rendered against it for the negligence of an agent or employee, Hertz acts as a self-insurer. On the other hand, Hertz acts as an insurer when it agrees to assume the liabilities of a third person for whose actions Hertz would not otherwise be responsible. See *Webster's Third New International Dictionary* 1173 (1971) (insurance: 'coverage by contract whereby for a stipulated consideration one party undertakes to indemnify or guarantee another against loss by a specified contingency or peril'); *cf. Cincinnati Ins. Co. v. Hertz Corp.,* 776 F.Supp. 1235, 1240 (S.D.Ohio 1991) ('[B]y offering liability insurance, Hertz has demonstrated a willingness to engage in the business of entering into contracts of insurance * * *. As such, Defendant's contention that they cannot be considered an "insurer" is not well taken.' (Citation omitted.))

"Hertz's assertion that either ORS 742.502 or ORS 806.130 controls, but not both, simply lacks merit. ORS 742.502(1) reads:

"Every motor vehicle liability policy insuring against loss suffered by any natural person resulting from liability imposed by law * * * shall provide uninsured motorist coverage * * *.

"The applicability of the statute does not depend on whether an entity acts as a self-insurer; rather it hinges on whether the parties formed a motor vehicle liability policy. Thus, a self-insured entity that issues a motor vehicle liability policy must comply with both ORS 742.502 and ORS 806.130." *Id.*, 120 Wash.2d at 424–425, 841 P.2d at 1249.

The court's holding and the public policy behind its reasoning is stated as follows:

"We hold Hertz liable to Van Vonno as a matter of law for uninsured motorist coverage of up to $100,000 per person and $300,000 per accident. The rental agreement, in which Hertz contracted to indemnify Van Vonno, constitutes a motor vehicle liability policy. E.g., *Trobaugh,* 597 So.2d at 496. By failing to offer Van Vonno an affirmative choice regarding the amount of uninsured motorist coverage, Hertz violated the duty imposed by ORS 742.502. We therefore reform the rental agreement to reflect UM protection up to liability limits. *Zuber v. Safeco Ins. Co. of Am.,* 96 Or.App. 596, 773 P.2d 800 (1989).

"In addition, we find that holding Hertz liable for uninsured motorist coverage up to $300,000 per accident does not violate notions of fundamental fairness. The financial responsibility laws exist to protect persons injured in automobile collisions. Public policy dictates that individuals may not circumvent the legislative scheme by declaring themselves self-insurers. The statutory design merely requires Hertz to offer its lessees an opportunity to accept or reject greater uninsured motorist coverage. If a lessee affirmatively rejects higher coverage, Hertz has fulfilled its statutory obligation. On the other hand, if the lessee accepts UM coverage up to liability limits, Hertz may charge an additional fee. Thus, requiring self-insured rental car companies to comply with ORS 742.502(2) does not impose an undue financial burden." *Id.*, 120 Wash.2d at 425–426, 841 P.2d at 1250.

The public policy embraced by the Washington Supreme Court finds widespread support in the decisions of sister states. *Modesta v. S.E. Pa. Transp. Auth.* (1983), 503 Pa. 437, 441–442, 445, 469 A.2d 1019, 1022, 1024 ("self-insurance is not a means by which self-insurers may avoid the claims of those individuals for whose protection the insurance laws have been enacted"; "[t]hus, the approval received by a self-insurer allowing it to self-insure is the equivalent of a 'liability policy of insurance' within the meaning of the Uninsured Motorist Act."); *Hartford Ins. Co. v. Hertz Corp.* (1991), 410 Mass. 279, 286, 572 N.E.2d 1, 5 ("[t]he broad remedial purpose of [the uninsured motorist Act] would not be served if an automobile owner could avoid maintaining underinsured motorist

coverage by becoming self-insured under a motor vehicle liability bond"); *Trobaugh v. Migliore* (La.App.1992), 597 So.2d 494, 496 ("[e]ssentially, these cases hold that when a self-insured car rental company offers liability insurance on the rented vehicle, the company places itself in the position of a vehicle liability insurer and must give the renter an opportunity to accept or reject UM coverage in accordance with [the statute]").

■ We find these authorities instructive and persuasive. Accordingly, we hold that by offering and extending liability coverage to its customer herein, Reserve brought itself within the requirements of the uninsured motorist statute by engaging in the equivalent conduct of a liability insurer.

■ We also find that plaintiff did not knowingly reject the uninsured motorist coverage as Reserve argues, as a matter of law, by initialling the rental agreement. This holding requires a detailed analysis of the complex, fine print of the rental agreement.

There is no question that Reserve offered and charged plaintiff for various insurance coverages. Under "COVERAGES," plaintiff accepted Box 4 on the rental agreement form, called "P" coverage, to wit:

"Liability provided to statutory limits. Collision and comprehensive provided under SafeRentsm and Subject to deductible amount written below."

The SafeRentsm Package which plaintiff accepted recites on the face of the rental agreement:

"Consumer agrees to pay *$10.00* per day to accept this option which pays for damages to the rental vehicle, except for tire and road hazard damage and includes additional benefits as described in a separate handout to which customer acknowledges receipt, reading and agreement.

"Customer Signature:  X /s/ [Teresa Harris]"

Thus, for the additional $10 per day charge, plaintiff was to receive protection against damages to the rental vehicle and "additional benefits described in a separate handout."

The reverse side of the agreement contains further detail on the SafeRentsm Package as follows:

*"SafeRentsm Package*

"If CUSTOMER ACCEPTS, and if Box 3 or 4 applies to this rental, COMPANY will waive all claims against CUSTOMER for any damage to the vehicle that would normally be covered by an insurance policy for collision and comprehensive coverage, provided the vehicle is used and operated in accordance with this agreement. If provided by CUSTOMER by the local office, Personal Accident

Protection (PAP) and/or Personal Effect Safeguard (PES) coverages are included. Their provisions and coverages are described in a separate handout and that document is incorporated herein. PAP is available ONLY if box 4 applies to this rental. PAP is not available in certain states and applicable in those listed on the separate hand-out."

Plaintiff accepted coverage under Box 4 and conceded that she received the separate PES and PAP hand-out material referenced above. That hand-out provided as follows under PAP ("Personal Accident Protection"):

"PAP

"2. Under PAP, the Company will provide personal injury protection (no-fault) benefits with the MAXIMUM deductible allowed by law in all jurisdictions that have no-fault insurance, except Michigan.

"PAP ONLY eliminates the waiver of no-fault benefits on the fact of the rental agreement, but the waiver of uninsured and underinsured coverages still applies. PAP is available ONLY if Box 2 or 4 applies to this rental, and PAP is NOT available is [*sic*] Michigan. PAP is NOT provided if customer, authorized driver and/or occupants are named insureds in an insurance policy covering them, their spouses, or relatives domiciled in their households, that under law takes priority for the payment of no-fault personal injury medical benefits."

To complete the pertinent provisions appearing on the reverse side of the Rental Agreement, it is necessary to review the following relating to Box 4:

"IF BOX 4 (on front) IS INITIALED, THE FOLLOWING PROVISIONS APPLY:

"COMPANY provides the following to CUSTOMER and all authorized drivers and occupants of the rental vehicle, based upon the laws of the state or commonwealth where the vehicle was rented or where any accident occurs:

"1. Where required by law and if it cannot be waived by CUSTOMER or if SafeRentsm is accepted and applicable, ONLY the basic MINIMUM personal injury protection (no-fault) medical and wage loss benefits with the MAXIMUM deductible allowed by law, with no stacking of coverages provided.

" * * *

"3. Where required by law the MINIMUM required uninsured or under-insured motorist coverages."

The only other provision that has logical application to this case is contained in what may be called a miscellaneous section set forth as follows on the front of the form, without any identifying caption:

"OFFICE HOURS: MON & FRI 8–6; TUES–THURS 8–5; AND SAT 9–12.

"—Vehicle pick up is available Monday thru Friday: 8:30 a.m.—4:00 p.m.

"—Rental rate based on calendar day. Days charged include the first day the vehicle is provided to customer thru and including the day vehicle is returned to the office. This does not apply in states which govern daily rates by law.

"—All parking and traffic violations are the responsibility of the customer.

"—Vehicle may not be removed from the state or metro area (SMSA) without prior written permission from the local office (requires separate form).

"—Any refunds due will be issued from one of our regional offices.

"—Insurance coverage must be maintained during the entire term of the rental.

"—NO personal checks are accepted for any deposits or rental charges.

"—Mechanical Breakdown/Accidents: If you should encounter any mechanical difficulties, call the office immediately. If you should have an accident, fill out the accident report package found in the glove box and then contact the office as soon as possible. You must obtain approval from the rental office prior to authorizing any repairs. We cannot guarantee reimbursement for any unauthorized repairs! THIS DOCUMENT CONSTITUTES YOUR RECEIPT. For details of the COMPANY'S deposit and refund policy see paragraph 4 on the reverse. RENTAL TERMINATION: Vehicle is due back by ____ or at the end of 30 days or upon DEMAND by Office, whichever occurs first.

"—Where optional under law, CUSTOMER declines no-fault personal injury medical benefits, uninsured and under-insured coverages. (This may not apply if SafeRentsm is accepted).

"Company Representative /s/ X CUSTOMER initials

"/s/ X."

It can be seen from this collection of fine print provisions that a respectable argument can be advanced on both sides of the legal issues presented on the summary judgment motions. On the one hand, plaintiff was offered protection for uninsured motorist coverage; otherwise, the agreement would not require the *customer* to decline it. The warning that the declination "may not apply if SafeRentsm is accepted," which it was in the instant case, further confuses the issue. On the other hand, it can be argued that she was not covered or, if such coverage was offered, it was rejected by plaintiff initialling various boxes. It is not unfair to describe the instant rental agreement as giving with one hand and taking away with the other.

In one of the leading Supreme Court cases interpreting the effect of rejections by an insured limiting coverage under the uninsured motorists statute, we find

that knowledgeable rejections should not be lightly inferred.  In *Ady v. W. Am. Ins. Co.* (1982), 69 Ohio St.2d 593, 597–598, 23 O.O.3d 495, 497–498, 433 N.E.2d 547, 549–550, the court stated as follows:

"In evaluating the validity of a contractual limitation, it is important to consider the nature of the parties involved.  The General Assembly, realizing that insurance companies are in a much stronger bargaining position *vis a vis* their customers when insurance is sold, decided that uninsured motorist coverage is desirable and mandated that it be offered.

" * * *

"Insurance companies write the policies and present the pre-printed forms to customers, most of whom are unfamiliar with terminology found in the multi-page policies.  Most customers accept the policies *in toto* and do not question, let alone actively negotiate to change or omit, any of the provisions in the pre-printed forms.  Therefore, an insurance company has the burden of showing that any rejection was knowingly made by the customer.  A customer has the option of rejecting coverage.  However, to make a rational decision to reject coverage, a customer has to be aware of a contractual provision, understand its terms and agree to it.  Thus, any rejection or exclusion should be conspicuous so that a customer is aware of its existence.  [Footnote omitted].  Furthermore, the language should be clear and easily understood by a lay person.  Also there should be evidence that the customer agreed to the restrictions on coverage.

"Applying these principles to the facts in this case, the exclusion in this pre-printed insurance policy was in small print and complex terminology.  The relevant definition interpreting the exclusion is on the reverse side of the page on which the exclusion is printed.  To be covered, a vehicle must be described in a schedule which is also in yet another location in the policy.  There is no cross reference to help a customer tie together these three items so that one might understand what is covered and what is being rejected by merely accepting the pre-printed form.  This exclusion is not conspicuous and the terms and implications are not clear.  Thus, it has not been shown that the customer was aware of, understood, or knowingly accepted this exclusion.

"This conclusion is supported by our previous rule that language in an insurance policy is to be construed strictly against the drafter, the insurance company, and liberally in favor of the insured.  *Ohio Farmers Ins. Co. v. Wright* (1969), 17 Ohio St.2d 73, 78 [46 O.O.2d 404, 406, 246 N.E.2d 552, 555].  A decade ago this court stated in *Curran [v. State Auto Mut. Ins. Co.* (1971)], *supra,* [25 Ohio St.2d 33, 38, 54 O.O.2d 166, 169, 266 N.E.2d 566, 569], that the 'uninsured motorist statute should be construed liberally in order to effectuate the legislative purpose that coverage be provided to persons injured through the acts of uninsured motorists.'  Thus, if the insurance company intended such an exclusion,

it should have the burden of using straightforward, simple language and showing that the exclusion was understood by the customer. Because this exclusion was not conspicuous and not clearly drafted for the lay person, it should be strictly construed against the insurance company and not permitted to limit the statutorily mandated coverage."

Reserve argues that "the rental agreement signed by appellant is exactly that—a rental agreement. It is not a policy of insurance issued by or on behalf of an insurance company." On the other hand, the rental agreement offers "coverages" to the plaintiff in place of insurance, as Reserve recognizes: "the only coverage provided to appellant was that which was set forth in the rental agreement." Clearly, the rental agreement contains provisions ("coverages") whereby Reserve agreed to indemnify or hold the plaintiff harmless from the kind of losses that occur in the operation of automobiles. Since the rental agreement contains the language of insurance, we will treat it as—and read it as—an insurance policy would be read, construing it strictly against the drafter and liberally in favor of the injured driver-lessee.

Plaintiff agreed to pay $10 per day for the SafeRentsm Package, "which includes additional benefits described in a separate handout." The SafeRentsm package further described on the reverse side of the form states: "If provided to CUSTOMER by the local office, Personal Accident Protection (PAP) * * * coverages are included." The PAP handout continues: "PAP ONLY eliminates the waiver of no-fault benefits on the face of the rental agreement but the waiver of uninsured and underinsured coverages still applies." Referring back to the face of the rental agreement—at the very end of the miscellaneous paragraph, after eleven unrelated topics, the following statement appears: "Where optional under law, CUSTOMER declines no-fault personal injury medical benefits, uninsured and under-insured coverages. (This may not apply if SafeRentsm is accepted)." Thus, it would appear that by a process of indirection, although plaintiff was charged an extra $10 per day for the special SafeRentsm Package, it could be argued that she had given up personal injury medical benefits and uninsured and underinsured motorists coverages by initialing this paragraph, *without any reduction in the $10 surcharge.* However, "this may not apply if SafeRentsm is accepted." We find these provisions confusing and ambiguous. Furthermore, we find that concealing this provision in a sea of fine print, which is only reached by indirection, is unconscionable and does not operate as a knowing declination of the referenced coverages by the plaintiff. As stated in *Ady v. W. Am. Ins. Co., supra,* 69 Ohio St.2d at 599, 23 O.O.3d at 499, 433 N.E.2d at 550–551:

"Therefore, we conclude that because the statute mandates that full coverage be offered, any restriction must be closely scrutinized to be sure that it complies

with the statutory purpose. Furthermore, an exclusion must be conspicuous and in terminology easily understood by a customer. A customer must be aware of the provision, understand the meaning, and voluntarily agree to any restrictions on the full coverage statutorily mandated. In this case, a pre-printed form was used and it has not been shown that the customer was aware of the exclusion, let alone understood the meaning and then knowingly agreed to reject this portion of the coverage. Thus, the exclusion is invalid because it does not comply with the statutory purpose and, furthermore, is not clear and conspicuous."

We have also expressed our previous concern for language of this character in *Grange Mut. Cas. Co. v. Fodor* (1984), 21 Ohio App.3d 258, 262, 21 OBR 302, 306, 487 N.E.2d 571, 575:

"No reasonably educated non-lawyer could be expected to understand the above-quoted language. Only by retaining the services of an attorney to research the matter could an insured discover what his rights and duties are under [the limitations] clause. Therefore we hold that, as a matter of law, the limitation clause at issue here (Condition 10 of Protection Against Uninsured Motorists Coverage, as amended by Endorsement A–114) is ambiguous, and not clear and easily understood by a lay person; it is therefore invalid and unenforceable. See *Ady v. West American Ins. Co., supra.*"

We also find that the declination of such coverage is contradicted by the Box 4 provision on the reverse side which indicate that the following provisions apply coverage:

"I. Where required by law and if it cannot be waived by CUSTOMER or if SafeRentsm is accepted and applicable, ONLY the basic MINIMUM personal injury protection (no-fault) medical and wage loss benefits with the MAXIMUM deductible allowed by law * * *.

" * * *

"3. Where required by law the MINIMUM required uninsured or under-insured motorist coverages."

The "where required by law" language may mean that if the state requires uninsured/underinsured motorist coverage generically, such as R.C. 3937.18 does, then it is applicable to the plaintiff's circumstances. Defendant construes it to mean that since a self-insurer is not required to maintain uninsured motorist coverage, it is not required by law for Reserve. "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Buckeye Union Ins. Co. v. Price* (1974), 39 Ohio St.2d 95, 68 O.O.2d 56, 313 N.E.2d 844, syllabus. The ambiguity will be resolved against Reserve.

Therefore, we find that construing the ambiguities in the rental agreement against Reserve, there is uninsured motorist coverage under the terms of the rental agreement and it was not knowingly declined by plaintiff. Summary judgment should have been entered for the plaintiff, not the defendant.

We reverse the summary judgment for the defendant and enter judgment for the plaintiff on the coverage issue only. The case is remanded to the trial court for further proceedings in accordance with law.

*Judgment accordingly.*

SPELLACY, P.J., and HARPER, J., concur.