OPINION
Plaintiffs-appellants, Stanley and Kimberly Aronson ("appellants")appeal from the summary judgment entered in the Summit County Court ofCommon Pleas, which judgment dismissed appellants' claims of defamation,abuse of process, and intentional infliction of emotional distressagainst Defendants-appellees The City of Akron, Summit County, Lynn C.Slaby, Darwin McGlumphy and Michael Woody.[1]Appellants assign as error:
 I. THE LOWER COURT ERRED IN HOLDING AS A MATTER OF LAW THAT THE APPELLANTS HAD NOT PRESENTED SUFFICIENT EVIDENCE TO DEMONSTRATE AN ISSUE OF FACT UNDER 2744.03(6)(B) REGARDING THE DEFAMATION CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS.
 II. THE LOWER COURT ERRED IN DETERMINING THAT DEFAMATION IS AN INTENTIONAL TORT.
 III. THE LOWER COURT ERRED IN FINDING AS A MATTER OF LAW THAT THE APPELLANTS HAD NOT PRESENTED SUFFICIENT EVIDENCE THAT APPELLEE McGLUMPHY ACTED OUTSIDE OF THE SCOPE OF HIS AUTHORITY IN PUBLICATIONS OF DEFAMATORY STATEMENTS TO THE MEDIA.
 IV. THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE APPELLANTS' CLAIMS OF INTENTIONAL INFLICTIONS OF MENTAL AND EMOTIONAL DISTRESS AS TO THE INDIVIDUAL DEFENDANTS.
In 1991, the Ohio Attorney General's office received an anonymous complaint alleging illegalities in the operation of the Akron Square Bingo game. Akron Square Bingo was operated purportedly on behalf of the Revere Road Synagogue and purportedly for the synagogue's benefit. Bingo games were conducted twice weekly.
As a result of the anonymous complaint, an investigator from the Ohio Attorney General's office made a personal visit to an Akron Square Bingo game and subsequently requested a more thorough investigation.
Thereafter, the Ohio Attorney General's office and the Akron Police Department decided to conduct a joint investigation of the bingo game. As a part of this joint investigation, undercover investigators and police officers visited bingo games, performed searches pursuant to warrant, and interviewed numerous witnesses. Following this investigation, Appellee McGlumphy, a vice detective who was the chief investigator for the Akron Police Department regarding this bingo investigation, prepared a summary of the investigation entitled "Key Report I". This report was provided to the Summit County Prosecutor's office for potential presentation of the case to the Summit County Grand Jury.
The case was presented to the Summit County Grand Jury where numerous witnesses testified that Appellant Stanley Aronson was involved in questionable, if not illegal, activity surrounding the operation of the bingo game. Evidence was presented of under reporting of attendance and profits realized during the bingo operation and that workers at the bingo games were illegally paid cash for their services. There was also evidence presented that might suggest a fraudulent insurance claim had been filed. On April 27, 1993, numerous indictments were filed, including indictments against appellants, for their involvement in the bingo operation.
Prior to their criminal trial, appellants plead guilty to some criminal charges.
Beginning some time in April, 1993, Appellees McGlumphy and Woody, vice officers with the Akron Police Department involved in the investigation at issue, and Appellee Slaby, the Summit County Prosecutor, made statements to the media regarding appellant's involvement in the alleged illegal activity described herein above. Appellants claim the following statements made by Appellee McGlumphy were defamatory:
 "[T]he game in the synagogue were bilked in several ways: the suspects under-reported the gate, the amount of money spent by people once inside and the proceeds from instant bingo games; and they rigged the instant bingo games, as well."
 "[T]he brothers [Stanley and Barry Aronson] kept up to $600,000 that should have gone to the Revere Road Synagogue charity by not reporting up to 400 people per week that played bingo."
 "[I]nvestigators have documented that the Aronsons and others connected with the bingo game did not donate more than $600,000 in the last two years to the game's designated charity."
 "[Stanley and Kim Aronson and Connie Kindel] filed a false claim with the Meridian Insurance Co. of Columbus."
 "[T]hree suspects filed a claim in late 1989 for $22,113 for water damage at the bingo hall . . . [but the actual damages were] no more than a few hundred dollars."
 "[T]he suspects inflated the scope of damages and profited from the insurance claim."
Appellants also allege the following statements made by Appellee Woody were defamatory:
 "[T]he Aronsons basically ran the game — they were in control of the records, they were in control of everything, they are board members in the synagogue, the Revere Road Synagogue and they conducted the daily business."
 "[W]e feel that we can prove that, ah, they under-reported attendance by 200 people per session."
 "[N]ow, when there is (sic) 2 sessions a week, 52 weeks a year and you're under reporting by 200, there's a lot of money that can be put in different places."
 "[T]he under reporting of 200 bingo players a night could account for between $2,000 and $4,000 per night in unclaimed bingo income."
 "[T]he state attorney general's estimate that a couple hundred thousand dollars a year were skimmed from the bingo game since it started 10 years ago."
 "[T]hey thought that jail and charges like this were for people not of their stature."
Appellants claim the following statements made by Appellee Slaby were defamatory:
 "[A]ttendance figures provided to state officials under-reported the number of people at the twice weekly games."
 "[S]tate reports filed by the operators claimed average attendance was 767, but investigators said they counted nearly 1,000 people per night during their investigation."
 "[T]he under reporting of 200 bingo players a night could account for between $2,000 and $4,000 per night in unclaimed bingo income."
 "Barry Aronson . . . and his brother Stanley, both executive members of the synagogue, . . . pocketed most of the bingo profits."
 "1990-1991 records show that the synagogue received about $92,000, but in reality more than $600,000 in proceeds were never reported — the money . . . lining the pockets of the Aronson brothers."
 "Stanley and Barry Aronson tried to cover up their illegal cuts by under-reporting the amount of people playing bingo each night."
 "[T]he Aronsons and others profited from the games in two ways: by skimming profits directly from the proceeds, and by rigging the instant bingo game likened to an instant lottery game."
 "[W]hile more than $90,000 . . . went into the synagogue's coffers from 1990-1991, $600,000 in profits . . . went to line the pockets of the Aronson brothers."
 "[S]urveillance shows the money is tied up in real estate and cars, $2 million worth, the prosecutors want turned over to the state."
 "This [referring to Stanley Aronson's Montrose property] is one of the properties that Stanley Aronson bought with proceeds from the bingo game — he sold it for $750,000."
 "[T]hose indicted helped to skim $2 million from the operation over the last several years."
 "[T]he synagogue was the victim and so were the citizens who went to Akron Square to play bingo and thought they had a fair chance of winning."
 "[T]he congregation members lost needed money that was rightfully theirs."[2]
On August 6, 1996, appellants, Stanley Aronson and Kimberly Aronson, filed a complaint against appellees, the City of Akron, Summit County, Slaby, McGlumphy, Woody, and Charles Quinn, alleging defamation, abuse of process, and intentional infliction of emotional distress. The case was originally filed in the Cuyahoga County Court of Common Pleas. Appellees subsequently moved for a change of venue and the Cuyahoga County Court of Common Pleas apparently granted said motion and transferred the matter to Summit County. The record is unclear as to when the Cuyahoga County Court of Common Pleas ordered the transfer.
Nonetheless, after the matter was transferred to Summit County, appellants voluntarily dismissed Charles Quinn, without prejudice.
By judgment entered September 21, 1999, the Summit County Court of Common Pleas, Judge John R. Milligan, retired, sitting by assignment, entered summary judgment in favor of appellees and dismissed appellants' complaint. Appellants have voluntarily abandoned their claims of abuse of process. As such, the within appeal only addresses whether the trial court erred in dismissing appellants' claims of defamation and intentional infliction of emotional distress against the appellees. For the reasons that follow, we find the trial court properly entered summary judgment in favor of appellees the City of Akron, Summit County and Slaby. However, we find the trial court erred in granting summary judgment on the issue of immunity in favor of Appellees McGlumphy and Woody.
 I, II, III
Through their first three assignments of error, appellants maintain the trial court erred in granting summary judgment in favor of appellees with respect to the defamation claims.
In reviewing a trial court's ruling on a summary judgment motion, an appellate court applies the same standard used by the trial court.Parenti v. Goodyear Tire Rubber Co.(1990), 66 Ohio App.3d 826, 829.Pursuant to Civ.R. 56(C), summary judgment is proper if there is nogenuine issue as to any material fact and if the moving party is entitledto judgment as a matter of law. It must appear from the evidence thatreasonable minds can come to only one conclusion and, viewing suchevidence most strongly in favor of the party against whom the motion forsummary judgment is made, that conclusion is adverse to that party. Id.The burden of establishing the appropriateness of summary judgment is onthe moving party. Mitseff v. Wheeler(1988), 38 Ohio St.3d 112, 115.Doubts must be resolved in favor of the non-moving party. Horton v.Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 686.
Since only legal questions exist, no special deference is to be afforded the trial court upon a review of an entry of summary judgment.Lorain Cty. Bd. of Commrs. v. United States Fire Ins. Co.(1992),81 Ohio App.3d 263, 267. We, therefore, review the matter de novo.Pennsylvania Lumbermens Ins. Corp. v. Landmark Elec. Inc.(1996),110 Ohio App.3d 732, 643; Tyler v. Kelley (1994), 98 Ohio App.3d 444,446.
In order to determine whether issues of material fact remain to be determined, thereby precluding summary judgment, the applicable substantive law must be examined. Anderson v. Liberty Lobby,Inc.(1986), 477 U.S. 242, 248.
R.C. Section 2744.02(B)(4) provides, in pertinent part:
 [P]olitical subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, work houses, or any other detention facility. . . ."
Generally, a political subdivision and its employees are immune from liability if the employee involved was engaged in the performance of a judicial, quasi-judicial or prosecutorial function. See R.C.2744.03(A)(1). However, the employee immunity in the performance of those functions can be defeated if the employee acted with malicious purpose, bad faith or in a wanton or reckless manner. See R.C. Section2744.03(A)(5) and (6)(b). While the individual employees, in the performance of judicial/prosecutorial functions, may be liable for their malicious, bad faith, wanton or reckless acts, R.C. 2744.03(A)(6) by its plain terms does not effect the immunity of the political subdivision.Fabrey v. McDonald Police Dept.(1994), 70 Ohio St.3d 351, 356.
In the instant case, the trial court determined that defamation constitutes an intentional tort. As such, since R.C. Section2744.02(B)(4) only subjects a political subdivision to liability for negligent actions, the political subdivision in this case, the City of Akron, could not be held liable for the intentional tort of defamation. We disagree.
Defamation is defined as a false publication that injures a person's reputation. Dale v. Ohio Civ. Serv. Emp. Assn.(1991), 57 Ohio St.3d 112,117. While the trial court correctly observed that the common law tortof defamation is generally considered an intentional tort, more analysisis required. See McGee v. Goodyear Automic Corp. (1995),103 Ohio App.3d 236, 248. To be sure, when examining the elements ofdefamation, it is clear that a person can defame another throughnegligent conduct. A cause of action for defamation consists of fourelements: (1) a false and defamatory statement about plaintiff; (2)published without privilege to a third party, (3) with fault of at leastnegligence on the part of a defendant, and (4) that was either defamatoryper se or caused special harm to the plaintiff. See Akron-Canton WasteOil, Inc. v. Safety-Kleen Oil Serv., Inc. (1992), 81 Ohio App.3d 591,601, citing Restatement of the Law 2d Torts (1977), 151, Section 558. As such, because defamation can arise from negligent conduct, a political subdivision can be liable for defamation if it is the result of negligence.
Accordingly, the trial court erred in its conclusion that Appellee City of Akron could not be held liable for the defamation alleged by appellants pursuant to R.C. Section 2744.02(B)(4).
We must, however, determine whether the alleged defamatory statements to the media were part of the judicial/prosecutorial function, i.e., does R.C. § 2744.03(A) encompass statements to the media relating to the investigation and prosecution of citizens. Although we believe such statements fall within the broad parameters of R.C. 2744.03(A), thereby immunizing the political subdivision, we also believe that the individual employees of the political subdivision who issue the statements are subject to liability if they act maliciously, in bad faith, wantonly or recklessly. Accordingly, the political subdivision herein, the City of Akron and the County of Summit have immunity under R.C. § 2744.03(A) for statements made to the media and/or to third parties during the investigation/prosecution process.
In dismissing the defamation claims against Appellees McGlumphy and Woody, the trial court summarily determined from the evidence in the record that reasonable minds could only conclude that said appellees did not act maliciously, in bad faith, wantonly, or recklessly with respect to their communications to the media regarding appellants. As such, the trial court concluded that Appellees McGlumphy and Woody were immune from liability pursuant to R.C. Section 2744.03(A)(6). We disagree.
While there is overwhelming evidence in this record, including the transcripts of the grand jury proceedings, tending to incriminate or otherwise implicate Appellant Stanley Aronson of wrongful conduct, there is also some evidence in the record to suggest that Appellees McGlumphy and Woody exaggerated, misconstrued, or revised witness statements regarding appellants. This Court is not concerned with the weight of the evidence. Instead, in summary judgment proceedings, the court's duty is merely to determine whether there is some competent and credible evidence upon which reasonable minds could come to different conclusions. It is the trier of fact who must weigh the evidence.
"Wanton misconduct" has been defined as a failure to exercise any care whatsoever. Hawkins v. Ivy(1977), 50 Ohio St.2d 114, syllabus. InRoszman v. Sammett (1971), 26 Ohio St.2d 94, 96-97, the Ohio Supreme Court stated,"
 "mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition of perversity on the part of the tort feasor." The perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury. Id. at 97. To act in reckless disregard of the safety of others, the conduct must be of such risk that it is substantially greater than that which is necessary to make the conduct negligent. Thompson v. McNeill (1990) 53 Ohio St.3d 102.
"Bad faith" has been defined as a "dishonest purpose, moral obliquity, conscious wrong doing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." Jackson v. ButlerCty. Bd. of Cty. Commrs.(1991) 76 Ohio App. 448, 454. "Malice" has beendefined as wilful and intentional design to do injury. Id. at 453.
In the instant case, appellants filed an affidavit of Attorney Richard V. Zurz, Jr. From that affidavit, reasonable minds could conclude that McGlumphy and Woody did not accurately reflect witness statements in their official reports witness statements. There was also evidence submitted that Appellees McGlumphy and Woody failed to include exculpatory evidence in their reports. While this evidence may be "minor" compared with the overwhelming evidence of alleged wrong doing uncovered during the criminal investigation, we cannot ignore such evidence during summary judgment proceedings. We believe that reasonable minds could conclude from this evidence that Appellees McGlumphy and Woody manipulated the official investigation. We further believe that such evidence creates a jury question as to whether Appellees McGlumphy and Woody acted maliciously, in bad faith, wantonly or in a reckless manner. Accordingly, we find the trial court erred in summarily dismissing the defamation claims against Appellees McGlumphy and Woody. We, however, do not make a finding as to whether the actions of McGlumphy and Woody as stated above, are directly related to the alleged defamatory statements.
In this regard, the trial court specifically stated that it was not considering the evidentiary material as it related to the alleged defamatory statements or the defenses of absolute or qualified privilege. As such, those matters are not before this Court and may be considered by the trial court if subsequent motions for summary judgment are filed on those issues.
With respect to the defamation claims against Appellee Slaby, we have thoroughly reviewed the record in this case and agree with the trial court's determination that reasonable minds could only conclude that Appellee Slaby, as a Summit County Prosecutor, was "acting as prosecutor upon the information that had been provided to him by numerous other, and independent sources, and that he was simply reflecting the status and progress of criminal investigation and prosecution." We find no evidence in this record to support a claim that appellee Slaby was acting maliciously, in bad faith, or in a wanton or reckless manner. It appears from the record before us that Appellee Slaby was simply providing to the media the information that had been provided to him as prosecutor. There is no evidence that Appellee Slaby participated or was in any way involved with the "misreporting" of witness statements. Simply stated, Appellee Slaby was relying upon the information provided to him by the law enforcement officials. Therefore, the trial court acted appropriately in dismissing the defamation claims against Appellee Slaby.
For the reasons stated above, this Court hereby reverses the trial court's judgment with respect to its rulings of immunity for Appellees McGlumphy and Woody. We affirm the trial court's ruling dismissing the claims of defamation against Appellees Slaby, Summit County and City of Akron.
For their fourth and final assignment of error, appellants maintain the trial court erred in dismissing their claims of intentional infliction of mental and emotional distress as to the individual defendants.
To establish a claim of intentional infliction of emotion distress, a plaintiff must establish the following elements: (1) that the actor either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to the plaintiff; (2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community;" (3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and (4) that the mental anguish suffered by the plaintiff is so serious of a nature "no reasonable man could be expected to endure it." (Citations omitted). Pyle v. Pyle (1993), 11 Ohio App.3d 31, 34.
As stated above, a political subdivision is not liable for the intentional torts of its employees. Instead, the political subdivision is only liable for injury, death, or loss to persons or property that is caused by the negligence of their employees. See R.C. § 2744.02(4). Additionally, with respect to the political subdivisions of the City of Akron and Summit County, we believe they enjoy the immunity from the claims of intentional infliction of emotional distress for the same reasons they are immune to the claims of defamation. As such, we agree with the trial court's dismissal of the claims of intentional infliction of emotional distress against the political subdivisions, City of Akron and Summit County.
With respect to the claims of intentional infliction of emotional distress against Appellee Slaby, we agree with the trial court's dismissal of that claim in favor of Appellee Slaby for the same reasons set forth above regarding to the defamation claims against Appellee Slaby.
With respect to the claims of intentional infliction of emotional distress against Appellees McGlumphy and Woody, we find that appellants have failed to present this Court with any evidence that appellants suffered mental anguish so serious that no reasonable person could be expected to endure it. Nowhere in appellants' brief do they direct this court to the evidence submitted as to that element of emotional distress. As such, we conclude the trial court properly dismissed the claims of intentional infliction of emotional distress against Appellees McGlumphy and Wood.
Appellants' fourth assignment of error is hereby overruled.
For the foregoing reasons, we affirm the trial court's decision dismissing the defamation claims and the intentional infliction of emotional distress claims against Appellees the City of Akron, Summit County and Slaby. We likewise affirm the trial court's decision dismissing the claims of intentional infliction of emotional distress against Appellees McGlumphy and Woody. We reverse the trial court's decision dismissing the claims of defamation against Appellees McGlumphy and Woody and hereby remand that matter to the trial court for further proceedings accordingly to law.
IT IS SO ORDERED.
By: Wise, J., Hoffman, P.J., and Farmer, J., concur.
[1] Although the common pleas court's judgment also made findings with respect to Defendant Charles Quinn, the record before us demonstrates that Defendant Quinn was no longer a party to the action having been voluntarily dismissed, without prejudice, by appellants prior to the trial court's summary judgment ruling. As such, any rulings by the trial court with respect to a non-party shall have no legal effect.
[2] We make no comment on whether the above alleged statements are defamatory.