FIORENTINO, Exr., Appellant,

v.

LIGHTNING ROD MUTUAL INSURANCE COMPANY et al., Appellees.

[Cite as *Fiorentino v. Lightning Rod Mut. Ins. Co.* (1996), 114 Ohio App.3d 188.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17728.

Decided Oct. 9, 1996.

*Lawrence Scanlon* and *Anne Marie O'Brien,* for appellant.

*Michael A. Malyuk* and *Christopher Niekamp,* for appellees Alan S. Hanlin & Associates, Inc. and Alan S. Hanlin.

*Robert J. Foulds* and *David B. Henderson,* for appellee Lightning Rod Mutual Insurance Company.

BAIRD, Presiding Judge.

Plaintiff-appellant, Teresa Fiorentino, as executor of the estate of Joel K. Shelton, presents this appeal from the judgment rendered in the Summit County Court of Common Pleas. The trial court granted summary judgment to defendants-appellees Lightning Rod Mutual Insurance Company ("LRM"), Alan S. Hanlin individually, and Alan S. Hanlin & Associates (collectively, "Hanlin").

The matter stems from an injury suffered by Joel K. Shelton, since deceased, during the course of his employment at Tire Mold, Inc. On June 5, 1989, Shelton was using a tire grinding wheel from which a protective guard had been removed. The wheel injured Shelton. Shelton then filed suit against Tire Mold. Shelton and Tire Mold agreed to a consent judgment on June 17, 1994. Pursuant to the terms of that agreement, Tire Mold was to pay Shelton $400,000 in satisfaction of his claim.

Tire Mold was insured by LRM, via a policy sold by Hanlin. However, Shelton claimed that the act resulting in his injury constituted an intentional tort on the part of Tire Mold. LRM then denied coverage to Tire Mold, asserting that its policy did not cover liability for intentional torts. Absent insurance coverage, Tire Mold apparently would have been unable to satisfy the consent judgment it had entered into with Shelton. Tire Mold and Shelton executed an additional agreement on April 8, 1994. Tire Mold conveyed $46,000 to Shelton, and assigned to Shelton whatever rights it had to collect under its policy with LRM. Specifically, Tire Mold agreed to "transfer and assign any claim, causes of action, suits, debts, sums of money or demands of any kind or description whatsoever in law or equity which they * * * may have or claim to have arising out of any matter pertaining to the procuring and maintaining liability insurance coverage on their business * * * that would have provided coverage for the claim of Joel K. Shelton up to and including the sum of [$300,000]."

In addition, although the agreement stated that he surrendered all his claims against Tire Mold, Shelton expressly reserved his rights to proceed against LRM and Hanlin.

Shelton then attempted to collect under the LRM policy to satisfy the remainder of the consent judgment. After LRM denied coverage, Shelton filed the instant action on January 18, 1995.[1] In that suit, Shelton also asserted claims against Hanlin for failure to ensure that Tire Mold had adequate insurance to cover such claims as Shelton's. Each party moved for summary judgment. The trial court did not expressly rule on Shelton's motion. Summary judgment was granted to LRM on the basis of a clause in the insurance contract between LRM and Tire Mold which invalidated the policy if it were assigned without LRM's written permission; summary judgment was granted to Hanlin because the trial court concluded that Shelton's claim had been asserted after the expiration of the applicable statute of limitations. Shelton's estate now appeals, asserting three assignments of error.

"I. The trial court erred in granting defendant-appellees Lightning Rod Mutual Insurance Company's, et al., (hereafter Lightning Rod) motion for summary judgment on the issue of non-assignability of the policy."

In its first assignment of error, appellant contends that the trial court erred when it determined that LRM was entitled to summary judgment on the basis of a clause in the insurance contract between Tire Mold and LRM. That clause stated that the "policy is void if it is assigned without [LRM's] written consent." It is not disputed that LRM never gave consent, written or otherwise, to any assignment of the policy. In ruling that this clause entitled LRM to summary judgment in its favor, the trial court recognized that, while contract rights are generally freely assignable, "[t]hat general proposition * * * may be modified by agreement of the plain words of the contract. A plain reading of LRM's policy does not require this Court to engage in any lexicological acrobatics to come to the conclusion that its plain meaning is to refuse assignment of any contract rights under its policy unless LRM has agreed to that assignment in writing. * * * The Court finds that the plain and unambiguous language of the LRM policy prohibited assignment of coverage to Shelton without LRM's consent, thus rendering the policy void."

In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court. *Perkins v. Lavin* (1994), 98 Ohio App.3d 378, 381, 648 N.E.2d 839, 840–841. Pursuant to Civ.R. 56(C), summary judgment is not proper unless "(1) No genuine issue as to any material

---

1. Shelton died from unrelated injuries on July 2, 1995; the claim is currently being pursued by his estate.

fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to that party." *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189, 1192.

Doubts must be resolved in favor of the nonmoving party. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686, 653 N.E.2d 1196, 1201–1202. Since only legal questions exist, no special deference is to be afforded the trial court upon a review of an entry of summary judgment. *Lorain Cty. Bd. of Commrs. v. United States Fire Ins. Co.* (1992), 81 Ohio App.3d 263, 267, 610 N.E.2d 1061, 1063–1064. We will, therefore, review the matter *de novo*. *Tyler v. Kelley* (1994), 98 Ohio App.3d 444, 446, 648 N.E.2d 881, 882.

Initially, we note that the trial court construed a clause in the insurance agreement which prohibited assignment of the insurance *policy*. However, the agreement between Tire Mold and Shelton provided that Tire Mold would relinquish its rights to *claims* which they might have pursued under the policy as a result of Shelton's injury.

Where an insurance policy is clear and unambiguous on its face, the words of the policy must be given their plain and ordinary meaning. *Johnston v. Akron Ctr. for Reproductive Health, Inc.* (1990), 68 Ohio App.3d 655, 657, 589 N.E.2d 432, 433; *Michigan Prop. & Cas. Guar. Assn. v. Booth* (Sept. 2, 1992), Wayne App. No. 2722, unreported, at 6, 1992 WL 217840. In this case, LRM and the trial court apparently interpret the nonassignability clause to signify that all rights under the policy are prohibited from assignment. However, the plain wording of the clause indicates only that the policy itself may not be assigned. It is apparent that Tire Mold was not transferring the policy itself to Shelton; the policy provided coverage only to Tire Mold, and Tire Mold was the named insured.

■ An insurance contract "must be given a fair and reasonable interpretation to cover the risks anticipated by the parties." *Snyder v. Motorists Mut. Ins. Co.* (1965), 2 Ohio App.2d 19, 21, 31 O.O.2d 65, 66, 206 N.E.2d 227, 228; *W. Res. Mut. Cas. Co. v. Eberhart* (1991), 81 Ohio App.3d 93, 98, 610 N.E.2d 481, 484–485. The assignment of a particular claim under the policy in question would not change the essential risks involved, *i.e.*, the insured party would remain the same, and the risks and benefits bargained for between insured and insurer would not change.[2] Tire Mold merely assigned a *claim* under the policy, that is, the right,

---

**2.** Had the *policy* itself been assigned, Shelton would have in effect become the insured, *i.e.*, he would have had the right to coverage under the insurance contract; where only a *claim* is

if indeed one existed, to collect or demand payment under the policy based upon an incident which had already occurred and for which a claim would thus have already accrued. This action did not alter the bargain between Tire Mold and LRM; rather, it simply empowered Shelton to pursue an alleged claim in Tire Mold's stead.

LRM contends that assignment of the policy necessarily includes assignment of all rights to claims under the policy. However, the nonassignability clause makes no mention of claims; nor does the policy contain any other provision clarifying this language. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus.

Neither "policy" nor "claim" is explicitly defined in the contract itself. Undefined terms in an insurance policy are to be given their plain and ordinary meaning. *Boso v. Erie Ins. Co./Erie Ins. Exchange* (1995), 107 Ohio App.3d 481, 486, 669 N.E.2d 47, 50–51; *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 685–686. "Policy" may be defined as "a writing whereby a contract of insurance is made," while "claim" may be defined as "a demand for something due or believed to be due (insurance) [or] a title to a debt, privilege, or other thing in the possession of another." Webster's New Collegiate Dictionary (1981 Ed.) 883, 203. Thus, the two terms are not synonymous. It is also clear from an examination of the policy itself that a *claim* (for loss coverage) is made under the provisions of the *policy*; there is no indication that the two are coextensive.[3]

---

assigned, the assignee receives the right to demand whatever proceeds were owed to the assignor upon that claim, but not to receive insurance coverage in its own right.

3. Essentially, the distinction is quite simple. The *policy* issued by LRM explicitly stated that if a certain event occurred, *i.e.*, if Tire Mold assigned the policy, LRM would be absolved of its duty to provide coverage. The simple fact is that Tire Mold never assigned the policy; rather, Tire Mold kept the policy. Tire Mold did assign its right to collect a debt (coverage proceeds) from LRM. As discussed, the right to collect coverage for a claim which has already accrued (and for which coverage has already been denied) is *not* the same as assigning the right to the policy itself, *i.e.*, to coverage for future claims which might arise under that same policy. The two are not identical, nor are they inseparable.

However, even assuming the contrary position, as the dissent advocates, that an individual claim *is* inextricably and fundamentally part of the policy, the result remains the same. Even if a claim is part of the policy, it is merely that—a *part*. It is not, and cannot be stretched or embroidered to become, more, *i.e.*, the part may not be construed as subsuming the whole. The exclusionary clause in the contract at issue, drawn by LRM, specifically mandates that "this policy is void if it is assigned." It does *not* state that "this policy is void *if any part of it* is assigned." LRM drew up this contract; it included language of its own choosing. Given

 At most, the prohibition against assignment of the policy is ambiguous as to whether assignment of a claim constitutes assignment of the policy. As a general matter, doubt or ambiguity in the language of a contract is strictly construed against the party who prepared it. *Owen v. Homes by Kremer, Inc.* (Sept. 18, 1996), Summit App. No. 17637, unreported, at 5, 1996 WL 525849, citing *Malcuit v. Equity Oil & Gas Funds, Inc.* (1992), 81 Ohio App.3d 236, 240, 610 N.E.2d 1044, 1046–1047. "Language in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer." *Buckeye Union Ins. Co. v. Price* (1974), 39 Ohio St.2d 95, 68 O.O.2d 56, 313 N.E.2d 844, syllabus; see, also, *Wayne Mut. Ins. Co. v. Mills* (July 31, 1996), Wayne App. No. 95CA0091, unreported, at 6–8, 1996 WL 425913. If the wording, typography, and punctuation selected by the insurer make a contract provision ambiguous, that provision must be construed strictly against the insurer and liberally in favor of the party asserting the claim. *Reeder v. Cetnarowski* (1988), 47 Ohio App.3d 90, 92, 547 N.E.2d 376, 378–379; *Mandat v. Reinecker's Bakery* (Dec. 15, 1993), Summit App. No. 16241, unreported, at 5, 1993 WL 526653.

"The insurer, being the one who selects the language in the contract, must be specific in its use; an exclusion from liability must be clear and exact in order to be given effect." *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 65, 543 N.E.2d 488, 490. LRM saw fit to explicitly prohibit the assignment of the policy itself; had it wished to specifically prohibit the assignment of claims accruing under the policy, it could have done so. Since this was not the case, LRM was not entitled to judgment as a matter of law on that issue. Accordingly, appellant's first assignment of error is sustained.[4]

"II. The trial court erred by failing to grant plaintiff-appellant's cross-motions for summary judgment."

In its second assignment of error, appellant asserts that the trial court should have rendered summary judgment in its favor. The record indicates that on April 10, 1995, appellant filed a response to LRM's motion for summary judgment. That document also contained a motion requesting, *inter alia*, that the trial court "grant summary judgment in favor of the Plaintiff and find that there is coverage under the [LRM] policy up to its limit." On July 5, 1995, appellant requested a ruling on its motion for summary judgment. On July 10, 1995,

---

that such language is to be construed against its author in the context of insurance contracts, it becomes apparent that the clause does not render coverage void.

4. We find, therefore, that assignment of claims arising under the policy does not render the policy void. However, we make no decision here as to whether the claim assigned was indeed a valid one; that issue was not determined by the trial court and, accordingly, will not be considered herein.

appellant again filed a formal motion requesting summary judgment against LRM "on the issues of assignability, declaratory judgment, and coverage." On January 16, 1996, appellant again requested summary judgment.

The trial court did not explicitly rule upon any of these requests. In its journal entry which disposed of the case below, the trial court indicated that all parties had filed motions for summary judgment. Though it granted LRM's and Hanlin's motions, it made no further mention of appellant's motions. Appellant now wishes this court to declare that it was entitled to summary judgment.

■ When a trial court fails to rule upon a pretrial motion, it will be presumed that it was overruled. *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 223, 631 N.E.2d 150, 154–155; *Georgeoff v. O'Brien* (1995), 105 Ohio App.3d 373, 378, 663 N.E.2d 1348, 1351–1352. Here, there is no indication that the trial court ever ruled on appellant's summary judgment motions; therefore, we will presume that they were overruled. Appellant would now have this court declare that the trial court erred in so doing.

■ Appellant is requesting relief on appeal on the basis of a claim which was not addressed or determined by the trial court. No trial has been held in this matter. The denial of a motion for summary judgment is not, by itself, a final appealable order pursuant to R.C. 2505.02. *Celebrezze v. Netzley* (1990), 51 Ohio St.3d 89, 90, 554 N.E.2d 1292, 1293–1294; *Hite v. Brown* (1995), 100 Ohio App.3d 606, 618–619, 654 N.E.2d 452, 459–460. Accordingly, we will not consider appellant's second assignment of error.

"III. The trial court erred in granting defendant-appellee Alan S. Hanlin and Associates Inc.'s, et al. (hereafter Alan Hanlin) summary judgment on statute of limitations."

In its third assignment of error, appellant contends that the trial court improperly granted summary judgment to Hanlin. In its decision, the trial court stated:

"Shelton alleges that Hanlin negligently failed to procure and maintain the proper insurance coverage which would have prevented the injuries, losses, and damages sustained by Tire Mold. Shelton thereafter amended his complaint to frame his cause of action in terms of a breach of contract; however, the Plaintiff has provided no evidence of such agreement to establish that there was a contract between Shelton or Tire Mold and Hanlin. * * * Accordingly, this Court finds Hanlin's argument persuasive and that the applicable statute of limitations for Plaintiff's tort claim is in fact four years."

The trial court then granted summary judgment to Hanlin, on the basis that appellant's complaint against Hanlin had been untimely brought. In reviewing

this determination, we employ the standards set forth in our discussion of appellant's first assignment of error.

Appellant filed its original complaint, which alleged only that Hanlin had been negligent and did not assert a contract claim, on January 18, 1995. Hanlin filed its answer to this complaint on March 8, 1995. On May 8, 1995, Hanlin filed its motion for summary judgment, asserting, *inter alia,* that appellant's claim was barred by the statute of limitations. On June 5, 1995, appellant requested and was granted leave to amend its complaint. An amended complaint, which included allegations that Hanlin had breached a contract with Tire Mold, was filed at that time.

In the third, fourth, and fifth claims for relief, the amended complaint asserted that Hanlin had "breached their quasi-contract to provide services," "breached their express and implied contracts and warranties contained therein," and "breached their fiduciary duty to Tire Mold Services, Inc." Essentially, appellant asserted, as its assigned claim from Tire Mold, that Hanlin had breached its covenant to provide adequate insurance coverage for Tire Mold when Hanlin failed to procure stopgap or other insurance to guard against intentional torts.

The trial court, citing *Kunz v. Buckeye Union Ins. Co.* (1982), 1 Ohio St.3d 79, 1 OBR 117, 437 N.E.2d 1194, held that the nature of this complaint, though ostensibly presenting a claim for damages due to breach of contract, actually sounded in tort. Therefore, the trial court concluded, the claim should have been brought within four years of the date of injury, pursuant to R.C. 2305.09. Since the injury to Shelton occurred in 1989, and the claim was not brought until 1994, the trial court found that it was time barred, and granted summary judgment to Hanlin.

Appellant contends that the complaint actually sounds in contract, and is therefore subject to the fifteen-year or, in the alternative, the six-year statute of limitations, delineated in R.C. 2305.07. However, it is "[t]he ground of the action and the nature of the demand [that] determine which statute of limitations is applicable." *VonBurg v. Hovey–Kaiser–St. Marie Agency* (Nov. 25, 1992), Lorain App. No. 92CA005304, unreported, at 3, 1992 WL 357426, citing *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 173, 63 O.O.2d 262, 268–269, 297 N.E.2d 113, 121. Relying on *Kunz,* we also held in *VonBurg* that "[w]hen the tortious conduct is viewed as a failure to perform contracted-for professional services, the action appears analogous to a professional malpractice action under R.C. 2305.09(D)." *VonBurg, supra,* at 3; see, also, *Nixon v. Bank One of E. Ohio, N.A.* (1991), 74 Ohio App.3d 550, 553, 599 N.E.2d 742, 744 ("[A]rguments under a fiduciary-duty theory sound in tort * * * and are governed by the four-year

statute of limitations."). Therefore, the action would be governed by a four-year statute of limitations.

Appellant further contends that, even if its claims are governed by a four-year limitations period, that period did not commence until Tire Mold was damaged, *i.e.*, until it entered the consent judgment with Shelton on June 17, 1994. However, as the Supreme Court of Ohio determined in *Kunz*, 1 Ohio St.3d at 81–82, 1 OBR at 119, 437 N.E.2d at 1196, "there was no invasion, or infringement upon or impairment of such interest until there had been a loss to appellants' equipment because until that event occurred such protection could avail appellants nothing. Their interest was in having protection when it was needed. * * * [T]he cause of action did not accrue and such statute of limitations did not begin to run until * * * the date of the job accident * * *.

 This court has previously held, in *VonBurg*, *supra*, that the cause of action originated with the initial property loss for which coverage was believed to exist. Thus, the date for the impairment of Tire Mold's interest, and consequently the date of the beginning of the limitations period, was June 5, 1989, the date of Shelton's injury. At that point, Tire Mold was injured because it did not have the insurance coverage for such events as it had supposedly contracted for with Hanlin.

 Therefore, contrary to appellant's contentions, the time for bringing suit upon such a claim expired on June 5, 1993. Though appellant did not become entitled, by virtue of Tire Mold's assignment, to assert Tire Mold's claim against Hanlin until April 8, 1994, Tire Mold by that time no longer had an enforceable claim to assign. The trial court properly granted summary judgment to Hanlin based on the statute of limitations. Appellant's third assignment of error is overruled.

The judgment of the trial court is therefore affirmed with respect to appellant's third assignment of error. However, we overrule the trial court's judgment with respect to appellant's first assignment of error, and remand the matter for further proceedings.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

SLABY, J., concurs.

REECE, J., concurs in part and dissents in part.

Reece, Judge, concurring in part and dissenting in part.

I dissent from the majority's disposition of Assignment of Error I. I concur in the balance of the decision.

An insurance policy, any coverage it provides, and any claims upon such coverage by virtue of that policy are so one and the same, so interchangeable, so intertwined, so inseparable, as to be synonymous. None exists in a vacuum. A claim for coverage under a policy has no meaning outside of the policy. An insurance policy only exists to provide coverage for valid claims. It has no purpose outside of coverage and claims for that coverage. To conclude otherwise, I believe, is to engage in antics with semantics.