OPINION
Defendant-appellant/cross-appellee Credit General Insurance Company appeals from the April 12, 1999, and January 18, 2000, Judgment Entries of the Stark County Court of Common Pleas. Plaintiffs-appellees/cross-appellants Bryan Andrade, Trent Lamp and Eldridge Ingram appeal from the June 30, 1999, and December 28, 1999, Judgment Entries of the Stark County Court of Common Pleas.
 STATEMENT OF THE FACTS AND CASE
On April 13, 1996, appellees were injured in an automobile accident allegedly caused by Larry Brown. At the time of the accident, Larry Brown was an insured under an automobile insurance policy (Policy No. PPA 0000111 00) issued to his then wife, Elaine Brown, by appellant Credit General Insurance Company. Both Larry Brown and Elaine Brown were listed drivers on the policy. The insurance policy, which covered the period from November 6, 1995, to November 6, 1996, provided coverage for bodily injury in the amount of $12,500.00 per person / $25,000.00 per accident. The only vehicle listed as a covered vehicle on the policy's declaration page is a 1980 AMC Concord. Pursuant to Part 1-Liability Coverage of the subject policy, appellant agreed as follows: We will pay for damages caused by any insured because of bodily injury or property damage to which this insurance applies, caused by an accident, resulting from the ownership, maintenance or use of an insured car. We will defend any suit asking for these damages. However, we have no duty to defend suits for bodily injury or property damage not covered by this policy. We may investigate and settle any claims or suit as we deem appropriate. We will not defend or settle after we have paid our limit of liability.
An "insured car" is defined in the insurance policy as follows: a) a car described in the declaration page but only for coverages for which a premium charge is shown; b) a car you purchase or lease during the policy period, for liability only coverages, if it replaces a car described on the declaration page. It must be of a type similar to a described insured car and you notify us within 30 days following the date of purchase or lease by you. Part III — Car Damage will be transferred, if purchased, subject to the completion of a vehicle inspection report by a representative of our choice; c) any additional car you purchase or lease during the policy period, provided you ask us to insure it. Part III — Car Damage coverage is subject to a vehicle inspection report by a representative of our choice; d) a car, not owned by you or a relative, while being used as a temporary substitute for any other car described in this definition but only if the car is withdrawn from normal use due to: breakdown, repair, servicing, loss or destruction; e) a trailer, for liability coverage only, while being towed behind an insured car; f) a non-owned car while driven by an insured.
The insurance policy also provided that appellant would not cover "[l]iability assumed by an insured under any contract or agreement." Appellees, on July 29, 1996, filed a complaint against Larry Brown in the Stark County Court of Common Pleas (Case No. 1996CV01504). Although it was advised of the lawsuit, appellant Credit General Insurance Company refused to defend Larry Brown in such case, arguing that it had no duty to defend or indemnify Brown under the terms of the subject insurance policy. After Larry Brown filed an answer to appellees' complaint on August 23, 1996, the trial court scheduled a jury trial for February 10, 1997. Thereafter, pursuant to a Judgment Entry filed on February 10, 1997 in such case, appellee Bryan Andrade and appellee Eldridge Ingram were each granted judgment against Larry Brown in the amount of $25,000.00 for compensatory damages and appellee Trent Lamp was granted judgment against Brown in the amount of $200,000.00 for compensatory damages. The February 10, 1997 Judgment Entry was signed and approved by both Larry Brown and counsel for appellees and also signed by the trial court. Previously, on January 6, 1997, Larry Brown and his wife, Elaine Brown, had signed an assignment stating as follows: "For consideration hereby received, the undersigned assigns to Bryan F. Andrade, Trent D. Lamp, and Eldridge B. Ingram all the undersigns' right, title, and interest in and to any cause of action that the undersigned may have against Credit General Insurance Company for Credit General Insurance Company's bad faith breach of contract and refusal to defend Larry W. Brown in an action filed in Stark County Common Pleas Court on July 29, 1996, being Case Number 1996-CV-01504, resulting in a judgment being rendered against Larry W. Brown in said action, with full right to maintain an action, and to settle, compromise, or reassign the cause of action, and to give a release in the undersigns' name and full discharge of the liability under the cause of action."
Subsequently, appellees, by virtue of the above assignment of rights, filed a complaint (Case No. 1998CV00161) against appellant on January 27, 1998, seeking coverage under the policy of insurance issued by appellant to Elaine Brown, Larry Brown's then wife. Appellees, in their complaint, set forth causes of action sounding in bad faith, breach of contract, and breach of fiduciary duty. Appellees specifically sought punitive damages in the amount of $1,000,000.00 in addition to compensatory damages. On February 25, 1998, appellant filed an answer to appellees' complaint. Thereafter, a Motion for Summary Judgment was filed by appellant on February 5, 1999, to which appellees filed a response on April 5, 1999. Pursuant to a Judgment Entry filed on April 12, 1999, the trial court overruled appellant's Motion for Summary Judgment, holding as follows: The judgment entered against the Defendant's insured, Larry Brown, in Stark County Common Pleas Case No. 1996CV01504 is a valid, enforceable judgment. Defendant elected to not defend Mr. Brown in said litigation and cannot now be heard to raise a defense to or challenge same in the case sub judice. The vehicle driven by Mr. Brown which was involved in the accident on April 13, 1996, under the policy of insurance issued by Defendant. Under said policy, any replacement vehicle with a similar classification is insured so long as the insured notifies the Insurer within thirty (30) days of acquisition of said replacement vehicle. In the instant case, the insured notified the Defendant of the acquisition of said vehicle within said thirty (30) days. Based on the above, the Court finds that Defendant is not entitled to judgment and the Court therefore overrules Defendant's Motion for Summary Judgment.
Subsequently, appellees, on May 24, 1999, filed a Motion for Partial Summary Judgment. Appellees, in their motion, argued that since the trial court, in its April 12, 1999, Judgment Entry, had found the judgment rendered against Larry Brown in Case No. 1996CV01504 a valid and enforceable judgment, "[a]s a matter of law, Defendant [appellant] therefore is obligated to pay the damages to Plaintiffs [appellees] found to have been incurred" in such case. Appellees further argued that, therefore, judgment should be awarded in favor of appellee Bryan Andrade and appellee Eldridge Ingram and against appellant in the amount of $25,000.00 each and in favor of appellee Trent Lamp and against appellant in the amount of $200,000.00. After appellant, on June 10, 1999, filed a response to appellees' motion, the trial court, as memorialized in a Judgment Entry filed on June 30, 1999, denied appellee's Motion for Partial Summary Judgment. The trial court, in its June 30, 1999, entry, stated that appellees' motion was denied "as it asks for judgment in excess of the [$12,500/25,000] policy limits which the Court cannot do, notwithstanding the amount of the judgments rendered. Any excess over the obligated policy limits relates to the claim of bad faith to still be established." Thereafter, a jury trial commenced in this matter on November 29, 1999. The jury, on December 1, 1999, returned with a verdict in favor of appellant. The jury, in responding to Interrogatory A, further found that appellant had not breached its duty to act in good faith in handling Larry Brown's claim, which had been assigned to appellees. For such reason, the trial court, as memorialized in a Judgment Entry filed on December 7, 1999, ordered that judgment was entered in favor of appellant and against appellees "on Plaintiffs' [appellee's] complaint with regard to any alleged bad faith or extracontractual damages." Pursuant to a separate Judgment Entry filed the same day, the trial court dismissed the remaining counts (Counts II and III) in appellees' complaint with prejudice. A Motion for Judgment Notwithstanding the Verdict or, in the Alternative, Motion for New Trial was filed by appellees on December 13, 1999. Eight days later, appellees filed a Motion for Order Pursuant to Ohio Revised Code Section 1343.03 seeking an order from the court granting appellees ten percent (10%) interest "upon the $25,000.00 policy limits amount that Defendant [appellant] has been determined to be obligated to pay Plaintiffs [appellees]. . . . for Defendant's breach of the insurance contract between Defendant and its insureds, Larry and Elaine Brown . . ." Appellees, in their motion, noted that the trial court in this matter had ruled that the judgment in Case No. 1996CV01504 was a valid and enforceable judgment, that appellant was bound by the same, and that appellant breached the subject policy of insurance by failing to defend or provide coverage to Larry Brown in Case No. 1994CV01504. Appellant, on December 23, 1999, filed a brief in opposition to appellees' Motion for Judgment Notwithstanding the Verdict or, in the Alternative, Motion for New Trial. Such motion was denied by the trial court via a Judgment Entry filed on December 28, 1999. On January 3, 2000, appellant filed a brief in opposition to appellees' Motion for an Order Pursuant to R.C. 1343.03. Appellant, on January 4, 2000, filed A Notice of Appeal of the trial court's April 12, 1999, Judgment Entry overruling appellant's Motion for Summary Judgment. A Notice of Cross-Appeal was filed by appellees on January 6, 2000. Appellees specifically appealed from the trial court's June 30, 1999, Judgment Entry denying their Motion for Partial Summary Judgment and the trial court's December 28, 1999, Judgment Entry denying their Motion for Judgment Notwithstanding the Verdict/Motion for New Trial. Thereafter, the trial court, as memorialized in a Judgment Entry filed on January 18, 2000, granted appellees' Motion for an Order Pursuant to R.C. 1343.03
and awarded appellees prejudgment interest on the amount of $25,000.00, the policy limits, at the rate of ten percent (10%) per annum from February 10, 1997. Appellant filed a Notice of Appeal of such entry on January 25, 2000. Appellant, in its brief before this Court, now raises the following assignments of error:
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION FOR SUMMARY JUDGMENT.
SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DETERMINED LARRY BROWN WAS OPERATING AN INSURED VEHICLE AT THE TIME OF THE ACCIDENT.
THIRD ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DECLARED THE JUDGMENT AGAINST LARRY BROWN AND HIS SUBSEQUENT ASSIGNMENT OF RIGHTS TO BE VALID AND ENFORCEABLE AS AGAINST CREDIT GENERAL.,
Appellees, in their cross-appeal, raise the following assignment of error:
 THE TRIAL COURT ERRED IN ITS DENIAL AS A MATTER OF LAW OF APPELLEES/CROSS-APPELLANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT.
 I, II
Appellant, in its first and second assignments of error, challenges the trial court's denial of appellant's Motion for Summary Judgment. Appellant specifically contends that the trial court erred in denying appellant's motion since, because the 1980 Ford Fairmont that Larry Brown was operating at the time of the April 13, 1996, accident was not an insured vehicle under the subject automobile insurance policy, appellant had no duty to defend or indemnify Larry Brown in Case No. 1996CV01504, the underlying case. We disagree. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35, 36. Civ.R. 56(C) states in pertinent part: Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresher v. Burt (1966), 75 Ohio St.3d 280. It is based upon this standard we review appellant's assignments of error. As is stated above, the insurance policy issued in the case sub judice by appellant to Elaine Brown lists Larry Brown as an insured driver. Part I of the policy provides for liability coverage as follows: We will pay for damages caused by any insured because of bodily injury or property damage to which this insurance applies, caused by an accident, resulting from the ownership, maintenance or use of an insured car. We will defend any suit asking for these damages. However, we have no duty to defend suits for bodily injury or property damage not covered by this policy. We may investigate and settle any claims or suit as we deem appropriate. We will not defend or settle after we have paid our limit of liability.
The term "insured car" is defined in the insurance policy as follows: a) a car described in the declaration page but only for coverages for which a premium charge is shown; b) a car you purchase or lease during the policy period, for liability only coverages, if it replaces a car described on the declaration page. It must be of a type similar to a described insured car and you notify us within 30 days following the date of purchase or lease by you. Part III — Car Damage will be transferred, if purchased, subject to the completion of a vehicle inspection report by a representative of our choice; c) any additional car you purchase or lease during the policy period, provided you ask us to insure it. Part III — Car Damage coverage is subject to a vehicle inspection report by a representative of our choice; d) a car, not owned by you or a relative, while being used as a temporary substitute for any other car described in this definition but only if the car is withdrawn from normal use due to: breakdown, repair, servicing, loss or destruction; e) a trailer, for liability coverage only, while being towed behind an insured car; f) a non-owned car while driven by an insured.
The only vehicle listed on the declaration page of the automobile policy issued by appellant to Elaine Brown, Larry Brown's then wife, is a 1980 AMC Concord. The parties in this matter agree that above subsections a, c, d, e, and f are not applicable. What the parties do dispute, however, is whether the 1980 Ford Fairmont that Larry Brown was driving at the time of the April 13, 1996, accident was a "replacement vehicle" as described in subsection b. To constitute a "replacement vehicle" under such subsection, the 1980 Ford Fairmont must have replaced the AMC Concord listed on the declarations page of the insurance policy. Since the term "replace" is not defined in the subject policy, such term must be given its plain and ordinary meaning. Nationwide Mut. Fire Ins. Co. V. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108. As noted by the court in West American Ins. Co. v. Howard (Sept. 25, 1981), Miami App. No. 81-CA-11, unreported, in common usage, the words "replace" and "substitute" are synonymous. Larry Brown, during his deposition, testified that prior to April 13, 1996, the date of the accident, he drove the 1980 AMC Concord to and from work and that his then wife, Elaine, did not drive the car. During his deposition, Brown testified as follows with respect to the Concord " I knew it was going bad. The solenoid was spinning and the starter, I knew the starter was going bad, and the radiator was leaking. It was just a matter of time." Deposition of Larry Brown at 12-13. Brown further testified that the Concord was not trustworthy. For such reasons, even though the Concord was still operable, Brown purchased the 1980 Ford Fairmont so that he could have reliable transportation to and from work. At the time of the April 13, 1996, accident, the Fairmont still had 30 day tags while the Concord, which was no longer being driven by Brown, was "parked in the garage." Deposition of Larry Brown at 53. There is no dispute that the April 13, 1996, accident in this case occurred within thirty days of Brown's acquisition of the Ford Fairmont and that Brown notified appellant within thirty days of the acquisition of the Ford Fairmont. Based on the foregoing, we find that the trial court did not err in holding that the Ford Fairmont was a replacement vehicle of similar classification. Clearly, when Brown purchased the Ford Fairmont, he intended that it take the place of the AMC Concord which, although operable, was unreliable and in danger of breaking down. Brown, during his deposition, testified that he purchased the Ford Fairmont as a replacement vehicle since he needed a "[t]rustworthy car to get back and forth to work, . . ." Deposition of Larry Brown at 52. The subject insurance policy in Howard, supra. provided coverage for an automobile that replaced an owned automobile. In the case sub judice, as in Howard, supra., there is no language in the subject insurance policy requiring the sale or disposition of the Concord or requiring the permanent substitution of one vehicle for another. Nor is there language in the subject policy requiring that, to constitute a replacement vehicle, the vehicle being replaced [in this case, the AMC concord] must be inoperable. As noted by the Court in Howard, "[r]equiring by implication that [the vehicle] be disposed of or incapable of further service [to constitute a replacement vehicle] constitutes the creation of a condition not expressed in the contract. Such construction leads to a lapse in coverage of use of an owned vehicle contrary to the purpose of the policy." Appellant, in its brief, argues that even if the Ford Fairmont replaced the AMC Concord, it would not constitute an insured vehicle under the subject policy since: Pursuant to the clear and unambiguous terms of the Credit General policy, a car may qualify as an "insured car" if it is "a car you purchase or lease during the policy period * * * if it replaces a car described on the declaration page." Elaine Brown, the Name Insured under the Credit General policy, is the "you" referenced in this definition. Because Larry Brown purchased the 1980 Ford Fairmont, rather than Elaine Brown, i.e. the "you" under the policy, the Ford Fairmont is not a "insured car" under the policy of insurance.
The term "you" is defined in the subject insurance policy as including "your spouse or a resident relative if living in your household." Since Larry Brown was married to Elaine Brown at the time of the April 13, 1996, accident, the word "you' would also encompass Larry Brown. To conclude, for the foregoing reasons, we find that the trial court did not err in holding that Larry Brown was operating an insured vehicle at the time of the April 13, 1996, accident. The Ford Fairmont being operated at such time was a "replacement vehicle" for the AMC Concord. The trial court, therefore, did not err in denying appellant's Motion for Summary Judgment. Accordingly, appellant's first and second assignments of error are overruled.
 III
Appellant, in its third assignment of error, maintains that the trial court erred as a matter of law when it declared the judgment against Larry Brown in Case No. 1996CV01504 and his earlier assignment of rights to appellees to be valid and enforceable as against appellant. We disagree. As is stated above, the automobile insurance policy issued by appellant in this matter to Elaine Brown expressly excludes coverage for "[l]iabilty assumed by an insured under any contract or agreement." Appellant initially argues that based upon such language, it had no duty to provide coverage for the liability assumed by Larry Brown pursuant to the Judgment Entry filed in Case No. 1996CV01504, the underlying case, on February 10, 1997. Such Judgment Entry, which was approved and signed by Larry Brown, grants a total of $250,000.00 in compensatory damages to appellees. The court, in State Farm Mut. Auto. Ins. Co. v. Northbrook Ins. Co. (Feb. 5, 1990), Montgomery App. No. 11593, unreported, considered a clause in an insurance policy which, like the clause in the case sub judice, specifically excluded from coverage liability assumed under any contract or agreement. According to the court in Northbrook, such clause, which the court referred to as a "contractual liability clause", "operates to relieve the insurer from liability where the insured's liability to a third person would not exist except for their express contract but has no effect where the insured's liability arises separately from or coextensively with the express contractual liability. Annotation (1959), 63 A.L.R.2d 1122; 12 Couch on Insurance (2 Ed.Rev. 1981), 60, Section 44A:38. "
We find that the "contractual exclusion clause" contained in the automobile insurance policy issued to Elaine Brown by appellant in the case sub judice is not applicable since Larry Brown, appellant's insured, did not assume liability which did not exist but for the agreed Judgment Entry. This is not a case in which Larry Brown's liability to appellees would not exist except for such agreed Judgment Entry. Appellant, in its brief, also asserts that Larry Brown's assignment of his rights to appellees for any cause of action Larry Brown had against appellant for appellant's failure to defend Larry Brown was invalid since appellant did not consent to the same. Larry Brown and Elaine Brown, pursuant to an assignment dated January 6, 1997, in Case No. 1994CV00504 had assigned all of their "right, title, and interest in and to any cause of action that the undersigned may have against Credit General Insurance Company for Credit General Insurance Company's bad faith breach of contract and refusal to defend Larry W. Brown" in such case. The insurance policy issued by appellant to the Browns in the case sub judice states under General Provisions that any "[i]nterest in this policy may not be assigned without our written consent." The trial court, in its June 30, 1999, Judgment Entry denying appellees' Motion for Partial Summary Judgment, held that the assignment by Larry Brown to appellees "was not an assignment of the policy, which would have been prohibited by the policy, but an assignment of the rights of the insured arising out of a claim of bad faith . . ." We agree. Had the policy itself been assigned, appellees would "have in effect become the insured" and would have the right to coverage under the insurance contract. See Fiorentino v. Lightning Road Mut. Ins. (1996), 114 Ohio App.3d 188, 192 at fn. 2. However, where only a claim is assigned, "the assignee receives the right to demand whatever proceeds were owed to the assignor upon that claim, but not to receive insurance coverage in its own right." Id. (Emphasis added). While the insurance policy in this case prohibited the assignment of an insured's interest in the policy without appellant's consent, the assignment between Larry Brown and appellees provided that Brown would relinquish his rights to any causes of action which he may have against appellant for bad faith, breach of contract and refusal to defend. Since the plain language of the nonassignability clause in this matter indicates that only the policy itself may not be assigned and makes no mention of the assignment of Brown's causes of action against appellant, appellant's argument is without merit. See Fiorentino, supra. As noted by the court in Fiorentino, "[a]n insurance contract "must be given a fair and reasonable interpretation to cover the risks anticipated by the parties." Snyder v. Motorists Mut. Ins. Co. (1965), 2 Ohio App.2d 19, 21, 31 O.O.2d 65, 66, 206 N.E.2d 227, 228; W. Res. Mut. Cas. Co. v. Eberhart (1991), 81 Ohio App.3d 93, 98, 610 N.E.2d 481, 484-485. The assignment of a particular claim under the policy in question would not change the essential risks involved, i.e., the insured party would remain the same, and the risks and benefits bargained for between insured and insurer would not change."
Id. at 192. The same holds true with respect to the assignment to appellees of Larry Brown's causes of action against appellant in the case sub judice. Despite the assignment, Larry Brown remained the insured under the subject policy. Furthermore, we believe that Larry Brown's causes of action against appellant were not an "interest" in Brown's policy. Appellant, in its third assignment of error, also argues that the judgment entered into in Case No. 1196CV01504 on February 10, 1997, against Larry Brown, was collusive and, thus, not enforceable against appellant. Appellant stresses that such judgment was rendered against Larry Brown "without appropriate hearing and without even any consideration of corporate negligence issues or valuation of the medical records." Appellant further maintains that the judgment was rendered solely at the discretion of appellees' counsel and the trial court and that Larry Brown, who signed the February 10, 1997, Judgment Entry, had no opportunity to refute the alleged damages. However, appellant cannot challenge the effect of the underlying judgment in Case No. 1996CV01504 because it was a consent judgment. The Judgment Entry filed on February 10, 1997, in such case was approved and signed by Larry Brown after an in-chambers meeting with the trial judge and appellees' counsel. Under Ohio law, "a consent judgment has the same binding effect as one entered by the court after summary adjudication or full trial." Columbus v. Alden E. Stilson Assoc. (1993), 90 Ohio App.3d 608, 615. Moreover, there is no evidence in the record supporting appellant's assertion that the consent judgment, which was signed by the trial court, was obtained through fraud or collusion. As is stated above, appellant, on February 5, 1999, filed a Motion for Summary Judgment with the trial court. In its motion, appellant argued, in part, that it was entitled to summary judgment because the judgment entered in February of 1997 against Larry Brown in Case No. 1996CV01504 was collusive. Appellant specifically points to the fact that such judgment was entered without any recorded hearings and/or meetings. In its motion, appellant also argued that Brown lacked knowledge of the alleged injuries in such case. However, the mere fact that there was no recorded hearing or meeting prior to the entry of such judgment does not lead to the conclusion that fraud or collusion occurred. As is stated above, Larry Brown, during his deposition, testified that he had signed the February 10, 1997, consent entry after meeting with appellees' counsel and the trial judge in the trial judge's chambers so that he would be "dropped out of the case." See Deposition of Larry Brown at 32. By signing the consent entry, Brown forfeited any right he had to contest the alleged damages. In short, we find that appellant failed to meet its burden for summary judgment. Based on the foregoing, we find that the trial court did not err in holding that the judgment entered into in February of 1997 in Case No. 1196CV01504 in favor of appellees and against Larry Brown and Larry Brown's subsequent assignment of rights to appellees were valid and enforceable as against appellant. Accordingly, appellant's third assignment of error is overruled.
CROSS-APPEAL, Appellees, in the sole assignment of error in their cross-appeal, argue that the trial court erred in denying appellees' Motion for Partial Summary Judgment. We disagree. Appellees, in their May 24, 1999, Motion for Partial Summary Judgment, had moved the trial court for summary judgment on their first cause of action, which was for breach of contract. Appellees also had requested that the trial court award them a total of $250,000.00 in compensatory damages on their first cause of action. The $250,000.00 represented the total amount of the consent judgment entered in Case No. 1996CV01504. However, the trial court, pursuant to a Judgment Entry filed on June 30, 1999, denied appellees' motion "as it asks for judgment in excess of the [$12,500/25,000] policy limits which the Court cannot do, notwithstanding the amount of the judgments rendered." The trial court further noted that any excess over the policy limits "relates to the claim of bad faith still to be established." Appellees, in their sole assignment of error, maintain that since the trial court, in its June 30, 1999, Judgment Entry, found that appellant breached its contract of insurance with Larry Brown, appellees were entitled to an award of damages in excess of the policy limits. Appellees specifically argue as follows: Since Credit General [appellant] refused to provide coverage as well as provide a defense for Brown, Brown suffered damages. In order to place Larry Brown in the same position he would have been in had Credit General [appellant] not breached its contract, i.e. without the liability of a $250,000.00 judgment, Brown, and hence Appellees/Cross-Appellants as Brown's assignees, were damaged in the amount of $250,000.00.
However, as this Court held in Sanders v. McGarry Ins. Agency, Inc. (Dec. 19, 1990), Tusc. App. No. 90AP050035, unreported, the measure of damages in a breach of insurance contract case is the amount that an insurer would have owed under the policy. With respect to their breach of contract claim against appellant, appellees, therefore, are bound by the subject insurance policy limits of $12,500.00 per person/ $25,000.00 per accident. Appellees, in their assignment, also contend that the trial court erred in denying their Motion for Partial Summary Judgment since there was no genuine issue of material fact as to appellant's bad faith in failing to provide coverage and/or refusing to defend Larry Brown in the underlying action. The standard for a bad faith claim was announced in Zoppo v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552, wherein the court determined that an insurer fails to exercise good faith in processing a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor. A lack of reasonable justification exists where an insurer refuses to pay a claim in an arbitrary or capricious manner. Hart v. Republic Mut. Ins. Co. (1949), 152 Ohio St. 185, 188. However, we find that appellees, in their May 24, 1999, Motion for Partial Summary Judgment, failed to submit any evidentiary material to the trial court supporting their allegations of bad faith as is required by Civ.R. 56(C). Moreover, we further find that, upon review of the record, there were genuine issues of material fact before the trial court as to whether appellant acted in bad faith in refusing to pay Larry Brown's claim. When Larry Brown initially was asked during a telephone interview with appellant's representative after the April 13, 1996, accident, whether the Ford Fairmont was a replacement for the AMC Concord, he answered that the Fairmont was an "additional car" and that he had never notified the insurance company to request coverage for the same. The subject insurance policy provides coverage for additional vehicles purchased or leased during the policy period provided an insured requests coverage for the same. However, Larry Brown did not notify appellant of his alleged "additional" vehicle until after the accident. Later, during his deposition in the case sub judice, Larry Brown testified that the Ford Fairmont was a replacement car rather than an additional car. Based on the foregoing, there were genuine issues of material fact as to whether appellant acted without reasonable justification in declining to provide a defense for Larry Brown in the underlying litigation.
Accordingly, appellees' sole assignment of error is overruled. The judgment of the Stark County Court of Common Pleas is affirmed.
By Edwards, J. Hoffman, P.J. and Farmer, J. concurs